# ANNA B. FAIRFIELD, Respondent, v. NICHOLAS BICHLER, et al., Appellants.

### Kansas City Court of Appeals, November 27, 1916.

1. **NEGLIGENCE: Gas Tanks: Welding: Separate Building.** A servant, with a helper, was employed in welding metal with a blaze from acetylene gas fused with oxygen. These gases were in tanks setting close together in the room where the welding was done and about 8 feet away. The room was a one-story brick structure about sixteen feet square. An explosion occurred demolishing the tanks, the room and killing the servant and two others. There was evidence tending to show that due care required that the tanks should have been in an enclosure outside of the welding room. It was *held* that this was sufficient to submit to the jury on the question of negligence; and that the fact alone that other men in the same business kept tanks in the welding room did not exonerate defendants.

2. **————: Customary Usage: Prudence and Care.** The rule that where one conducts his business in the way that other persons conduct similar business, should include that such other persons are prudent and careful. For though a certain mode of business is customarily followed, it may be a negligent and careless mode.

3. **————: Usage: Patent Danger: Evidence: Jury.** Though there is evidence that the men conducting a self evidently dangerous business are prudent and careful, yet if the mode is patently a negligent way, the jury may properly refuse to believe they are prudent and careful.

4. **PARTNERSHIP: Death of Partner and Servant at Same Instant.** Where a partnership negligently conducted its business so as to cause an explosion of gases which killed a servant and one of the partners, it was *held* that while the death of a partner will dissolve the partnership, yet where the injury to the servant and the partner's death are at the same instant, the partnership is liable for the death of the servant; and the fact that the servant did not die until several hours after the partner, will not affect the question.

5. **————: ————: Instructions.** Where liability is predicated on negligence, it is error to give an instruction which omits to submit that hypothesis. Instructions examined and commented upon.

Appeal from Buchanan Circuit Court.—*Hon. Thomas B. Allen,* Judge.

REVERSED AND REMANDED.

*Hogsett & Boyle* and *William E. Stringfellow* for appellants.

*Randolph & Randolph* and *F. D. Goud* for Respondent.

ELLISON, P. J.—Plaintiff is the widow of Ernest Fairfield who was an employee of Geis & Bichler, a partnership and proprietor of boiler and sheet iron works in the city of St. Joseph. He was killed in an explosion on the 20th of October, 1914. Geis was killed in the same explosion and Bicher was appointed administrator. The latter is a party defendant in this cause both as an individual and as such administrator. The action is for damages and is based on charges of negligence specified in the petition. The judgment was for the plaintiff.

It is alleged in the petition that a part of defendant's business was welding metals by the use of two gases (oxygen and acetylene) conveyed in two rubber hose from tanks, the hose uniting at the end and thereby fusing the gases, so that when ignited they made a blaze, or torch of intense heat and performing proper service when applied to the metal. It is alleged that defendants built a small one-story brick building about seventeen feet square with only one room, in which they installed two metal tanks. One of these tanks was the larger and acetylene was generated therein by "feeding" carbide into water. The other tank was filled with oxygen from some other place and brought to the building. These tanks were near each other in a corner of the room and the work bench, where the welding was done, stood about eight feet away. It is charged that both of these gases were powerful and dangerous explosives. Attached to the acetylene tank is what is called a "motor case" or "water bottle" said to contain ten quarts of water. The gas which has been generated in the tank itself, passes from such tank through this water bottle into the service pipe, thence by the hose to the point where it unites with the oxygen

hose, blending therewith and when ignited becomes the welding torch as above stated. A back-fire from the torch is liable to follow the hose back to the acetylene tank which, if not protected, would cause it to explode, but this water bottle is a protection against such an accident, as the fire could not pass through the water bottle, if properly filled, to the tank itself.

After stating that it was defendant's duty to furnish deceased with a safe place to work, the following acts of negligence are specified in the petition: *First,* they furnished deceased unusual, defective and unsafe gas. *Second,* that the tanks were defectively constructed and the material therein was. defective. *Third,* that the acetylene tank was not provided "with a sufficient water bottle with water therein to prevent a back fire from the torch." *Fourth,* that the room was too small, was improperly arranged and ventilated. Fifth, that the tanks should have been put in a place entirely outside of the room or building where the welding was done, so as to have been isolated from the flame of the torch, or sparks from the metal.

It was shown by testimony given by experts that too much pressure could cause explosion of acetylene gas, and that it would explode in contact with fire, but oxygen would not. That the latter will explode by expansion caused by heat applied to the tank in which it is held.

One Shamrod was defendant's foreman, but deceased after some eight or ten days instruction by an expert paid by defendants, had handled the torch and controlled the apparatus for near four months. It seems that defendants had just started an oxygen gas plant near by and that one Frid, an expert, from such a plant at Kansas City, had been sent to defendants' plant to instruct or assist them in getting started. He testified that deceased came to the oxygen plant and asked him to come over that he was "having some trouble with the gases." Geis was there and they, with deceased, went over to see "what the trouble was." Deceased took hold of the torch and applied it to metal

plate he was welding when the explosion occurred with terrific force. It killed deceased, Geis and a bystander, Frid being the only one in the room left alive and he was badly injured. He testified that he saw a flash and then came the explosion. It totally destroyed the building and both tanks were blown open or apart, the oxygen tank scattered in every direction, pieces were carried four hundred feet away. There was some evidence tending to show two explosions almost together—only far enough apart to distinguish a dull sound and then, immediately, the main and destructive one.

While it was said that the acetylene gas could be made to explode from too much pressure, we think the evidence, and reasonable inferences to be drawn therefrom, together with the circumstances, afford reasonable and probable ground to believe either that escaping gas came in contact with the torch, or that back fire passed along the hose back through the "water bottle" (insufficiently or improperly filled) to the acetylene tank. The explosion of the gas in the oxygen tank, which gas, as we have stated, will not explode from contact with fire, but will from expansion caused by extreme heat, is accounted for by experts by the heat of the exploding flash of the gas in the acetylene tank. The evidence showed this heat to have been 6,000 degrees.

There was evidence tending to show that proper care and prudence required that the gas tanks should not have been located in such proximity to the work bench where the welding torch was used, and that sparks occasionally fall from the metal, and that they should have been located in some proper structure *outside* of the welding room, or building. The jury may well have found that if that had been their location, either of the two things which did occur would not have occurred, viz, that there would not have been an explosion, or, if there had, it would not have killed deceased. These acts of commission and omission are a part of the negligence specified in plaintiff's petition.

Deceased was a young married man nineteen years and six months old. We think defendants' suggestions

that he was an experienced man fully capable of handling the plant, and that he was in exclusive charge of it are not supported by the record. We have already seen that d 'endants had him instructed for about eight days, when other evidence showed that it should require a year of experience and teaching to fully qualify one for such position. He was being paid only about one-third what a capable and experienced man should receive. While it is true that deceased was in charge of the welding with the assistance of a helper, yet one Shamrod was the foreman over him. The foregoing considerations justify the trial court in overruling the demurrer to the evidence.

Defendants insist that if the master conducts his business in the manner customarily followed by experienced men in the same line of business it is conclusive against negligence. In support of this insistence we are cited to Coin v. Lounge Co., 222 Mo. 488; Chrismer v. Bell Tel. Co., 194 Mo. 189, 209; Brands v. St. Louis Car Co., 213 Mo. 698, 708, and many cases from other States.

Applying this rule to this case, defendants contend that it was conclusively shown that other similar plants had their gas tanks placed in the same room with the welder and that none separated them by putting the tanks in a separate structure. This insistence makes it necessary to examine the rule invoked with a view to understanding whether it has been properly stated by defendants and properly applied by them.

The rule to be correctly stated should include the qualifications that the other similar business conducted in the same way, should be conducted by prudent and ordinarily *careful* men. Then, if the triers of the fact believed that the other similar business was conducted by such prudent and careful men in a certain way, they would not be permitted to say such mode, followed in the given case, was negligence. For a mode of business which is adopted and followed by men of ordinary prudence and care is the standard; not only in this State

195 M. A.—4

but in others to which we will refer. It is for the jury
to find the preliminary fact whether the men shown to
have so conducted their business were, in fact, prudent
and careful men. Though a business patently dangerous
is conducted by any number of persons in a way as to
strike every one as being extremely hazardous, the jury
would be justified in finding that such persons were not
prudent persons and therefore could refuse to adopt
their mode of business as a test, and refuse to excuse a
defendant for following it. If, in a given case against
the proprietor of a powder factory for damages resulting
from an explosion caused by permitting fire to be carried
into the powder room, it were shown that other manu-
facturers conducted their business in the same way, the
jury, of course, would refuse to accept the statement
of any number of witnesses that such men were careful
and prudent.

We think it apparent from that part of the opinion
in Coin v. Lounge Co., supra, l. c. 506, that the rule in
cases patently involving extraordinary hazard, the jury
would not be bound by evidence that such business,
carried on in a patently dangerous way, was being con-
ducted by prudent men. So it was said in Texas &
Pac. Ry. Co. v. Beyhmer, 189 U. S. 468, 470, ''that the
question whether the defendant was liable for it de-
pended on whether the freight train was handled in the
usual and ordinary way. Instead of that, the court left
it to the jury to say whether the train was handled with
ordinary care, that is, the care that a person of ordinary
prudence would use under the same circumstances. This
exception needs no discussion. The charge embodied one
of the commonplaces of the law. What usually is done
may be evidence of what ought to be done, but what
ought to be done is fixed by a standard of reasonable
prudence, whether it usually is complied with or not.''

We think the view of this question which we are
endeavoring to express, finds support in 4 Thompson
Law of Negligence, sec. 3770. He says that ''the rule
of ordinary care (that is the way it is ordinarily done)
directs the jury to consider, not whether the machinery

was dangerous, but whether it was of the kind ordinarily used for similar work. . . . Thus individual and even incorporated employers are allowed by their general custom or habit of acting, or by their general neglect and inattention to social duty, to make a rule of law for their own exoneration.'' Further on, in the same section, the author says that, ''The standard is not what men ordinarily do under like circumstances, but what reasonably prudent and careful men, having due regard for their social obligations—that is to say, for the rights and safety of others—do under like circumstances.''

The same author in section 31, volume 1, says, that ''the standard demanded by the law is not ordinary care of men generally, but the *ordinary care of prudent men,* engaged in a particular employment or specialty.'' (Italics the author's.)

In Lappenfield v. Railroad, 91 Cal. 48, 57, the court applied the rule of accustomed use to ''an appliance or machine not *obviously dangerous.*''

In Larson v. Ring, 43 Minn. 88, the rule was applied where the act was not ''self evidently negligence.''

The language used in Mayhew v. Sullivan Mining Co., 76 Maine, 100, 112, is a striking illustration of our view. The court said that, ''If the defendants had proved that in every mining establishment that has existed since the days of Tubal Cain it has been the practice to cut ladder holes in their platforms, situated as this was while in daily use for mining operations, without guarding or lighting them, and without notice to contractors or workmen, it would have no tendency to show that the act was consistent with ordinary prudence, or a due regard for the safety of those who were using their premises by their invitation. The gross carelessness of the act appears conclusively upon its recital.''

We have noted in Coin v. Lounge Co., supra, Judge GANTT in stating the rule has omitted the words ''careful or prudent'' men, conducting similar business, but manifestly one or both those words were understood. They are used in the Missouri cases to which he refers; some written by himself. And so one or the other is

used in the cases from Pennsylvania, Michigan and Nebraska to which he refers in Brands v. Railroad, 213 Mo. l. c. 708, 709.

Defendant further insists that the death of Geis dissolved the partnership and that his partnership estate cannot be held liable for damages. In response to this we say, that Geis was alive when Fairfield was hurt. The partnership existed when the wrong was done— that is, Geis' death and Fairfield's injury were simultaneous. The partnership was dissolved by Geis' death after the wrong was committed, and the circumstance that Fairfield did not die until some hours afterwards, will not influence the fact that the injury was inflicted while Geis was alive, though at the instant of his death.

We however find error in the instructions for plaintiff. The first one besides being confusing in construction, makes defendants insurers of the safety of the acetylene apparatus. After full preliminary as to deceased being employed, etc., the instruction continues thus: "and if said acetylene generator was not so equipped as to prevent back fire from reaching the acetylene gas in the generator, or had become defective so as not to prevent back fire reaching gas in the generator causing an explosion; and if you believe an explosion was caused by reason of a back fire from the torch through the tube into the acetylene generator, then your verdict should be for the plaintiff." This is such faulty construction as to be confusing. It would be relieved somewhat if the word "thereby" was put between the words, "generator" and "causing;" or if the words "causing an explosion," in the fourth line from the bottom, had been omitted altogether. But the hypothesis of defendants' negligence is not referred to directly, or in effect. The mere fact of the defect and the explosion is made to determine liability however unforeseen the defect, or however careful defendants may have been.

The second instruction for plaintiff properly submits defendants' negligence in failing to have a barrier erected between the tanks and the torch and work bench, or to have had the tanks located outside, yet it does not

submit the hypothesis whether, if there had been a barrier, plaintiff would not have been killed by the explosion, thereby establishing a causal connection between the negligence and the death. There was evidence tending to prove the explosion to have been so terrific and destructive that it might well have been believed that a barrier built in the room would not have saved deceased.

The third instruction was defective in this respect: It submitted three causes for either of which defendants were stated to be liable; one that the explosion was caused "by some defect in the tank," or "in the working of the automatic portion of the generator," or "from any defect or leak which is (was) not within the knowledge of this plaintiff, but is (was) or by the exercise of reasonable diligence, could have been in the knowledge of Geis & Bichler, or either of them before said explosion, then your verdict shall be for the plaintiff." The last stated cause of the explosion is properly required to have been in the knowledge of defendants, but the two others are not, and thus defendants were made insurers if the jury believed the explosion came through either of those causes. Another defect in the instruction may not have been read to the jury as it is now printed; if it was, it was very liable to mislead. It submits whether the defect or leak was "not within the knowledge of *this plaintiff.*" It should have read "the deceased Fairfield."

The court's action was proper on defendants' refused instructions. The judgment will be reversed and cause remanded. All concur.