KATIE MURPHY (ROARK), Respondent, v. ELEC-TRIC PARK AMUSEMENT CO., and RUFUS BRAINERD, Appellants.

In The Kansas City Court Of Appeals, March 6, 1922.

1. **NEGLIGENCE:** Where Several Acts of Negligence Were Supported by Proof, the Question Which Produced Injury is for the Jury. Where two or more grounds of negligence are charged and there is substantial evidence in support of one or more of them, the question of which produced the injury is properly submitted to the jury.

2. **THEATERS AND SHOWS:** Parks and Amusements: Whether Negligence Caused Plaintiff's Injuries Received in Sliding Down Chute in Amusement Park, Question for Jury. Where plaintiff, injured in sliding down a chute in an amusement park alleged that the construction of the slide was negligent in that persons descending were caused to come down sidewise, and that the pad at bottom of chute was allowed to become displaced and by reason thereof plaintiff landed on the ground, and that attendant at bottom of chute negligently failed to catch plaintiff, *held* there was substantial evidence for submission of defendants' negligence to jury.

3. ———: ———: The Fact That Slide was Constructed and Operated as Other Such Slides Were Customarily Constructed and Operated Did not Prove That There was no Negligence in Construction and Operation Thereof. The mere fact that other such slides are operated and constructed in a similar manner does not prove that there was no negligence in the construction and operation of slide in question and trial court under the evidence did not err in refusing to give an instruction that defendants were negligent if defendants constructed and operated said device as other such devices were customarily maintained, constructed and operated.

4. **WITNESSES:** Court Did Not Err in Refusing to Strike Out Answer to Question on Cross-Examination Which was Responsive to Question. In an action for injuries received in sliding down a chute in an

amusement park to ascertain state of plaintiff's mind at time she was using slide she was asked on cross-examination, "And when you made up your mind and formed a judgment to use it, you formed the judgment with the knowledge of the whole situation, didn't you?" and plaintiff answered she did not know she was going to get hurt, *held*, responsive to question and court did not err in refusing to strike it out.

5. **EVIDENCE: Physicians Statement that Condition of Plaintiff's Ankle was Painful, Held Harmless in View of Plaintiff's Evidence That Ankle Pained Her.** In an action for personal injuries where plaintiff testified that injured ankle pained her, the statement of her physician' that the ·condition of the ankle was painful, *held* harmless as such evidence tends only in a cumulative manner to prove a fact otherwise established by competent and uncontroverted evidence.

6. **DEPOSITIONS: Court Justified in Refusing to Permit Defendants' to Introduce Parts of Deposition of Defendant not Explanatory of Parts Introduced by Plaintiff.** It was not error for trial court to refuse to permit defendants to introduce parts of deposition of a defendant, not explanatory of the parts introduced by plaintiff, where said defendant was present and testified during trial.

7. **PLEADING: Variance: Defendant not Having Been Mislead to His Prejudice, Variance Held to be Not Material.** Where it was claimed there was a variance between allegation and proof in that the petition placed ownership and operation of device in defendants, whereas proof showed ownership and operation in two defendants, as partners, and lessees of amusement park, one of said partners having not been made a party defendant, which alleged defect was brought to attention of court by answer and motion to quash summons on part of other defendant, partner, held, as partners could be sued jointly or severally, there was no ground for reversal under sections 1272 and 1273, Revised Statutes 1919, the defendant not having been mislead to his prejudice and the variance not being material.

8. **THEATERS AND SHOWS: Parks and Amusements: Whether Attendant at Bottom of Chute in Amusement Park was Purposely Stationed to Catch Patrons as They Finished Sliding Down, Question for Jury.** Whether act of attendant in catching patrons at foot of chute as they finished sliding down was voluntary and not purposely done as a part of attendant's duty, *held* a question for jury.

Appeal from the Circuit Court of Jackson County.—*Hon. Charles R. Pence,* Judge.

AFFIRMED.

*Hogsett & Boyle* for respondent.

*Frank Hagerman* and *Henry L. Jost* for appellants.

ARNOLD, J.—This is an action in damages for personal injuries alleged to have been received from a device, or slide, connected with, and part of a concession in an amusement park.

Defendant Electric Park Amusement Company, a corporation, is the lessee of a certain tract of ground which is devoted to public park purposes and public amusements in the City of Kansas City, Missouri, and commonly known as Electric Park. Certain parts of said leasehold are subleased on a basis of thirty per cent of the gross receipts as rental therefor.

Defendant Brainerd and one McGuire became such sub-lessees of a tract of this ground upon which they erected buildings and enclosures which they called the "Bug House," for admission to which a fee was charged and wherein a number of devices, intended for amusement of patrons, were located within a room about fifty feet square. One of these devices consisted of a chute, located at the southeast corner of said building, near the south wall thereof. This chute was a wooden structure throughout, with no mechanical appliances. Its peak height was about twenty feet, its length about fifty feet, with a sliding surface, three to four feet in width, which was perfectly flat, of highly polished maple and designed for speed. From the peak height there was a sharp descent toward the lower end where the exit was made, which said end was about twenty inches above the floor. Not far from the exit there was an abrupt curved hump arranged in the chute for the purpose of diminishing the velocity obtained by a body descending to that point. The sides of the chute were about eight inches higher than the sliding surface.

At the foot of the chute, and against the end thereof, were kept two thin pads, one on top of the other, each about eight feet in width, fifteen feet long and three inches thick. On top of these was kept a third pad, or tick, about eleven feet long and five feet wide, filled with straw to a thickness of about sixteen inches. A patron using the slide would ascend to the peak by a stairway running along its side and, on reaching the top, would step over to the slide, sit down and then release, or push, himself to a start.

An employee was kept at the top of the stairway to direct the movement of persons descending so that a patron finishing his slide would have time to move away from the foot thereof before another was permitted to start. Another employee was stationed at the bottom, beside the pads, to see that those who finished the slide moved promptly out of the way. The testimony tends to show that this last-named employee also assisted patrons in alighting and kept the pads and straw tick in proper place. Every part of the device, including the starting and stopping facilities, was in plain view.

Plaintiff, a woman forty-six years of age, was injured on the evening of July 27, 1919, while sliding down the chute. Her testimony is to the effect that in making the descent, by reason of the excessive width of the chute, her body was turned sideways and, in alighting, her right foot was turned under her, in which position she was allowed to alight without being caught by the attendant at the bottom of the slide; that she thereby landed upon the floor, the pads not being in place and that by reason thereof, the bones in her right leg and in and about the ankle joint were crushed and fractured, and her left foot and ankle were injured.

The amended petition alleges three grounds of negligence, i. e. (1) the chute was too wide to be reasonably safe for persons using the same, and in that respect, was negligently constructed; (2) at the time plaintiff slid down the chute, the pads or mattresses at the

bottom, designed to catch patrons, were not in proper position for such purpose, and that the attendant in charge of the chute had negligently allowed the same to become displaced. (3) That it was the duty of the attendant at the bottom of said chute, in the exercise of ordinary care, to catch persons as they came out at the end of said chute, and that he carelessly and negligently failed to catch plaintiff at said time and place.

Defendants filed a motion to strike out specified portions of plaintiff's amended petition, which said motion was by the court overruled. Thereafter defendants filed their separate answers, each of which was, first, a general denial, and, as a special defense the defendant Electric Park Amusement Company alleged that it did not own, maintain, or have anything to do with the maintenance and operation of said amusement device, or instrumentality named in the petition; that the same was operated by a partnership, which said partnership did covenant and agree to indemnify and save harmless the defendant Electric Park Amusement Company from any and all claims for damages made against it, by any person, for injuries or damages due to negligence on the part of said partnership. The answer also contained a plea of contributory negligence and assumption of risk.

The separate answer of defendant Brainerd, as special defense, charges the device complained of was owned and operated by defendant Brainerd and one John T. McGuire, as co-partners, under the firm name of R. H. Brainerd & Co., and that there is a defect of parties defendant, in that said John T. McGuire is a necessary party for a proper determination of this cause, in so far as said partnership is concerned, and that Brainerd, separate and apart from said partnership, had no interest in, or connection with, the ownership, management and conduct of said amusement device. This answer also contained pleas of contributory negligence and assumption of risk.

The trial was to a jury, resulting in a verdict for plaintiff against both defendants, in the sum of $1500.

Defendants offered separate demurrers at the close of plaintiff's evidence, which were overruled. Thereupon, defendant Brainerd filed a motion in his own behalf to dismiss and discharge him because of the variance alleged in his answer, which said motion was by the court overruled. Separate motions for new trial and in arrest were filed by defendants and overruled by the court. Both defendants appealed.

The first assignment of error is that a peremptory instruction should have been given as asked separately by both defendants. In support of this position defendants urge (a) that the evidence showed without conflict that the device was contructed, maintained and operated as similar devices were constructed, maintained and operated, and thus the evidence negatived the existence of negligence, instead of establishing it; (b) that the device was plainly visible and known to plaintiff, and that she assumed the risks and damages incident to its use.

"In reviewing the direction of a verdict for plaintiff, the evidence for plaintiff should be considered in its most favorable aspect. Madsen v. Insurance Co., 185 S. W. 1168; Burton v. Pryor, 198 S. W. 1117; Meenach v. Crawford, 187 S. W. 879, 882."

The testimony shows the chute was from three to four feet in width and the petition charges that by reason of such width the device was negligently constructed. This is the only charge of faulty construction and it is based upon the contention that it was wider than necessary to hold comfortably, in an upright position, the body of a person sliding down, without allowing it to turn sideways. It is shown that plaintiff, in making the descent, for some reason not clearly shown, turned, or was turned, sidewise and was thereby injured.

Defendant Brainerd testified that persons did not turn sideways in the chute "unless they lost their nerve,"

and explained he meant by that, unless they "get scared, get going too fast and try to stop." This witness further stated the construction of the chute was such that there was nothing to hold the body in the position in which it started and that a person would not turn sideways if he were expert enough to hold his body perfectly rigid. He testified, further, that persons descending the slide strike in all sorts of shapes "because they don't keep their nerve on the come down and try to hold themselves back." And that if a person sliding should happen to put his hand down on the chute and try to hold himself back, he would turn sideways.

On this point there is no conflict in the evidence, the contention of plaintiff being that the contruction of the slide was such that persons descending could, and sometimes did, come down sidewise, and that such construction was negligent. Defendant insists that the construction was the same as is ordinarily used in the same, or similar, devices, and that, therefore, it was not faulty. There was evidence that users of the chute in question came down in all sorts of positions.

The second charge of negligence is that the pad, or mattress, at the bottom of the chute was allowed to become displaced and that by reason of such displacement, plaintiff landed on the ground, instead of the mattress. There was substantial evidence to this effect.

Defendant argues that the evidence so adduced falls far short of furnishing a basis from which the jury might infer that the slide was defectively constructed, or that it was any part of the duty of the attendant at the foot of the slide to arrest the progress of persons descending the chute, or that he actually performed any such service; or that the mats at the bottom of the chute were misplaced at the time plaintiff made her descent.

We are unwilling to accept defendant's estimate of the value of the evidence on this point. There is substantial evidence that the attendant at the bottom had been receiving sliders at the end of the chute and as-

sisting them in alighting upon the mat, and helping them therefrom in order that there might be no interference with the next descending patron. There was also evidence that the mat was not in place.

Touching the third charge of negligence, there was evidence to show that the attendant at the foot of the chute failed and neglected to catch plaintiff when she arrived at the bottom; that he was talking with another person and, at that moment, did not give plaintiff any attention. Defendant's evidence on this point is that it was no part of the duty of said attendant to catch patrons as they descended, and that it was not the duty of such attendant to see that the mats were in place.

It must be conceded that this chute held within its construction elements of possible danger, and it would be a natural conclusion that if it were not the attendant's duty to see that the mats were in place, there should have been some anchorage provided so that their displacement have been impossible.

The rule is well established that where two or more grounds of negligence are charged and there is substantial evidence in support of one or more of them, the question of which produced the injury is properly submitted for the wise determination of the jury. Citations are unnecessary on this point. We, therefore, rule against defendants' contention that their demurrers should have been sustained, there being substantial evidence in support of the charges of the petition.

As a second assignment of error, defendants urge that since there was evidence that the device was constructed, maintained and operated as such devices are similarly and customarily constructed, maintained and operated, the refusal of defendant's requested instruction "I" was error. This instruction is as follows:

"The court instructs the jury that if you find from the evidence that the owner of the amusement device and instrumentality mentioned in the evidence constructed, maintained and operated the same as such devices were

usually and customarily constructed, maintained and operated, as shown in the evidence, then and in such event he cannot be guilty of negligence or failure to exercise ordinary care within the meaning of these instructions, and if such is your finding plaintiff is not entitled to recover and you must return a verdict for the defendants.''

Defendants insist that if the construction of the slide and the manner of its operation were in compliance with the construction and operation of similar instrumentalities followed by experienced and ordinarily prudent men, it is conclusive against negligence of defendants.

Our attention is directed to the statement of defendant's witness Meyer, whose testimony is to the effect that he was an expert in the operation of chutes, operated one of his own, and that he had seen and observed the one in question and that ''the chute is practically built on the plan of all chutes,'' and that he formed this opinion by observing the chute. This witness also testified that it was not customary to keep an attendant at the bottom to catch persons descending the chute, but that such attendants were there for the purpose of helping persons therefrom who, from damp clothing or other retarding condition, might not clear the slide. His testimony would have a tendency to refute the inference that there was no negligence in failure of defendants to have an attendant stationed at the foot of the slide to receive patrons on their finishing the descent. The inference intended to be drawn from this theory being that, as other such slides are operated and constructed in a similar manner, there is no negligence here.

We do not accept this theory of defendants. This court held in Fairfield v. Bichler, 195 Mo. App. 45, 49:

''The rule to be correctly stated should include the qualifications that the other similar business conducted in the same way, should be conducted by prudent and

ordinarily careful men. Then, if the triers of fact believed that the other similar business was conducted by such prudent and careful men in a certain way, they would not be permitted to say such mode, followed in the given case was negligence. For a mode of business which is adopted and followed by men of ordinary prudence and care is the standard; not only in this State, but in others,'' etc. . . . Though a business patently dangerous is conducted by any number of persons in a way as to strike everyone as being extremely hazardous, the jury would be justified in finding that such persons were not prudent persons and therefore could refuse to adopt their mode of business as a test, and therefore refuse to excuse a defendant. for following it.''

Any other view of the matter would permit individuals, or corporations, to adopt a standard or custom of construction or operation in connection with their business, obnoxious to well-known rules of safety, and therby establish a custom that would be a rule of law for their own exoneration. [4 Thompson on Negligence, sec. 3770.] The instruction offered by defendants omits the words ''careful and prudent.'' We think the refusal to give this instruction was not error.

Defendant's next objection is to the admission of testimony of plaintiff to the effect that she did not know the device was dangerous when she started to use it, or she would not have gone upon it, on the ground that it was improper testimony and a decision of a material issue by the witness. Plaintiff's statement was made in reply to the following question, on cross-examination:

''Q. . . . And when you made up your mind and formed a judgment to use it, you formed the judgment with the knowledge of the whole situation, didn't you?

''A. I didn't know it was dangerous or anything like that, I didn't know I was going to get hurt, or I wouldn't have gone upon it.''

The court, in overruling defendants' motion to strike out this answer, said:

"I think it should remain. I think it is in response to the inference that might arise from your question."

This, and one or two preceding questions, were directed to ascertaining the state of the plaintiff's mind when she concluded to use the slide. The answer was responsive to the question and there was no error in the refusal of the court to strike it out. [22 Cor. Jur. 704, pp. 610-12.] This rule is upheld in Heffernan v. Meumond, 198 Mo. App. 667, quoting Van Sickle v. Brown, 68 Mo. 627:

"When a party to a suit is admitted as a witness, he may testify as to the intention with which he did an act, whenever it is material to the issues to determine what such intention was. [Chambers v. Chambers, 272 Mo. 262, 1. c. 282, 283, 127 S. W. 86; Wheeler v. Chestnut, 95 Mo. App. 546, 1. c. 556, 557, 69 S. W. 621.] Such testimony is admissible for what it may be worth, to be considered by the court or jury in connection with the acts and conduct of the party shown in evidence, touching the matter. [Chambers v. Chambers, supra.]"

The citations of defendants' counsel are not in point on this question.

Defendants complain of the admission of certain testimony of Doctor Saunders because the witness was allowed to speculate as to whether or not plaintiff was suffering pain. The question asked the Doctor was:

"Q. Is the condition in which that ankle is at the present time, Doctor, is it, or is it not necessarily a source of pain? What I mean is, is that a painful condition of the patient or not?"

"The Court: This is a professional witness and he can give his opinion."

Counsel for defendants objected that under the rule, even a professional witness cannot speculate as to whether someone else is suffering pain.

"A. The condition is painful."

The witness had testified as to the condition in which he found plaintiff's ankle on examination which he made at the request of plaintiff's counsel, and the question and answer were directed to the results of such examination, and were no more than an opinion of the witness who had qualified as an expert. Plaintiff testified that the ankle pained her. It is a well establish rule of appellate practice that the erroneous admission of evidence which tends only in a cumulative manner to prove a fact otherwise established by competent evidence and uncontroverted, operates as harmless error only. [O'Keefe v. United Railways Co., 124 Mo. App. 1. c. 624 and cases cited.] The judgment will not be reversed on this ground.

Further defendants urge that the court improperly allowed the use of portions of the deposition of defendant Brainerd, and then erroneously refused to allow defendants to put in other portions of the deposition explanatory of the matters which plaintiff was thus allowed to read to the jury.

The ruling complained of is based upon the circumstance that plaintiff was permitted to read to the jury certain portions of defendant Brainerd's deposition as an admission. Counsel then objected that "unless there is read in that connection by counsel such other and further portions of the deposition that have to do with this particular matter that is proposed now to be read," it should not be admitted. Responding to this objection, plaintiff's counsel then went through the deposition and read portions of it having to do with the manner in which patrons came down the slide. This was objected to by defendants because the whole of the deposition was not read.

The court ruled that the portions offered would be admitted with the understanding that defendant would be permitted to offer any portion of it that was explanatory of the matter offered by plaintiff. The parts offered by plaintiff had to do with the manner in which deponent had observed patrons coming down the slide.

Defendants then offered parts of the deposition which the court ruled out, excepting only the parts thereof considered explanatory of the parts introduced by plaintiff. Defendant Brainerd was present at the trial and gave his testimony. The court clearly was justified in this ruling . [Schmitz v. Railway, 119 Mo. 256, 271; Bogie v. Nolan, 96 Mo. 85, 91.] Further discussion of this point, or citation of authorities is deemed unnecessary.

Again, defendants declare there was variance between allegation and proof in that the petition placed ownership and operation of the device in the defendants, whereas the proof showed ownership and operation in defendant Brainerd and one McGuire, as partners, and lessees of defendant Electric Park Amusement Company, the contention being that McGuire was not made a party defendant and this alleged defect in parties was brought to the attention of the court by defendant Brainerd's answer, and also by motion of Brainerd to quash summons on him.

There is no dispute between the parties that partners may be sued jointly or severally. Defendant urges, however, that this rule applies only when the petition charges ownership and operation by a partnership and that then only can one partner be sued.

We are unable to accept this as a statement of the law. The situation is clearly covered by statute (sec. 1272, Revised Statutes 1919.) There is nothing in the record disclosing that Brainerd was misled to his prejudice, and the variance is not material. It is provided in section 1273:

"When the variance between the allegation in the pleading and the proof is not material, the court may direct the facts to be found according to the evidence, or may order an immediate amendment without costs."

This section, furthermore, admirably meets the objection of defendants that instruction No. 1 given for plaintiff is erroneous because it broadens the issues. [Hensler v. Stix, 113 Mo. App. 162, 88 S. W. 108; Daley

v. Redburn, 143 Mo. App. 653, 127 S. W. 924; First Nat'l
Bank v. Stam, 186 Mo. App. 439, 171 S. W. 567; Stone
v. McConnell, 187 S. W. 884.]

Defendant further urges that instruction No. 1 is
erroneous because it authorized the jury "to find and
declare it to be the duty of the servant at the foot of the
chute to catch the plaintiff as she descended the slide."
Defendant Brainerd testified that the act of catching pa-
trons as they finished the slide, if engaged in by the at-
tendant, was purely voluntary on the part of such at-
tendant.

Under all the facts and circumstances in evidence,
we are of the opinion that the jury reasonably might
infer that the attendant was stationed at the foot of the
chute for that very purpose. It cannot be successfully
contended that the jury would not have the right to make
such reasonable inference and to disregard the testimony
of Brainerd on this point.

We fail to find any reversible error in the record.
The judgment is affirmed.