PETOSKEY and another, Appellants, v. SCHMIDT and another, Respondents.

*October 4—October 29, 1963.*

For the appellants there was a brief by *Schneiderman &
Strnad* of Milwaukee, and oral argument by *Burton A.
Strnad.*

For the respondents there was a brief by *Thomas J.
Regan, Robert F. Larkin,* and *Robert A. Hess,* all of Milwaukee, and oral argument by *Mr. Regan.*

GORDON, J. Numerous technical deficiencies in the proceedings are asserted by the plaintiffs as a basis for a new trial. We will consider them seriatim.

### I. *Use of the Conjunctive in the Verdict.*

The first question of the special verdict inquired as to the negligence of "the defendants Robert Schmidt and State Fair Park, Inc." The plaintiffs contend that the question

should have contained the expression "or either of them." This argument is based upon the plaintiffs' analysis of the testimony which prompts them to assert that the jury could have found that Mrs. Petoskey's fall was the result of negligence on the part of another employee, Fred Johnson. If Mr. Johnson were negligent, then his employer, State Fair Park, Inc., would be negligent even though Mr. Schmidt may not have been at fault. Mr. Johnson testified that it was his duty to report to Mr. Schmidt if he found anything out of the ordinary on the premises. He further testified that he had no occasion that evening to report anything to Mr. Schmidt.

The trial court disposed of this issue in the following language:

"I know of no basis upon which the defendant could have been held negligent with respect to that accumulation except through the negligence and performance of his duties by Mr. Schmidt, and it was made clear that if they found Schmidt negligent, that they must then, as a matter of law, find State Fair Park negligent."

It would have been preferable to have framed the question in the disjunctive. *Vlasak v. Gifford* (1946), 248 Wis. 328, 21 N. W. (2d) 648. However, under the circumstances of this case, we find no error in the use of the conjunctive. There is not sufficient testimony to support the plaintiffs' contention that State Fair Park, Inc., might have been held responsible based upon the conduct of Mr. Johnson. The record is clear that it was Mr. Schmidt who had basic responsibility for clearing ice and snow. Mr. Johnson's duty was primarily directed to reporting his discoveries to Mr. Schmidt. Since Mr. Schmidt was on the premises at all times and made personal observations of the general area in question on three or four occasions during the evening, we conclude that there was no prejudicial error in the form of the verdict.

## II. *Time of Injury in the Verdict.*

The time of the injury referred to in the first question of the special verdict is phrased as follows: "At the time and place of the injury to the plaintiff . . ." It is urged by the plaintiffs that this should have read "at and prior to the time of the injury to the plaintiff . . ." Plaintiffs' counsel argues that the wording used in the verdict directed the jury's attention to the precise moment of the event, whereas, it is claimed, the question should have inquired as to whether the defendants ought to have done something prior thereto in order to make the place safe.

In our opinion, there is no merit to this contention. If the question had been framed as the plaintiffs propose, it would have permitted the jury to have explored the conduct of the defendants for periods far in advance of the time of the injury. In a safe-place case involving a temporary condition, the words "at the time and place" were used in the special verdict question and no disapproval was indicated by this court—although the issue was not specifically dealt with. *Krause v. Veterans of Foreign Wars Post No. 6498* (1960), 9 Wis. (2d) 547, 101 N. W. (2d) 645. In our opinion, the language selected by the trial court was reasonably calculated to obtain a meaningful response from the jury.

## III. *Number of Items in the Verdict.*

The plaintiffs complain because only two items of negligence were inquired about with reference to the defendants' conduct, whereas three items were asked with reference to Mrs. Petoskey's negligence. The answer to this objection is contained in *Taylor v. Western Casualty & Surety Co.* (1955), 270 Wis. 408, 411, 71 N. W. (2d) 363, where this court said that the degree of negligence attributable to a party is not to be measured by the number of respects in which he is found to have been at fault.

It is rare that litigants will ever agree upon the precise phraseology of an inquiry to the jury as to the parties' negligence. So long as the submission by the trial court is reasonably and fairly designed to procure from the jury answers to the significant items of potential fault, an appellate body should be reluctant to intrude. In our opinion, there are indeed a number of other ways in which the negligence of these defendants could have been phrased. However, the use of the terms "lighting" and "slush and ice" constituted a fair and unbiased submission of the fault chargeable against the two defendants.

### IV. *Notice and Inspection.*

Numerous cases are cited by plaintiffs' counsel in which safe-place violations turned upon notice, constructive notice, and the failure to inspect. *Turk v. H. C. Prange Co.* (1963), 18 Wis. (2d) 547, 119 N. W. (2d) 365; *Lee v. Junkans* (1962), 18 Wis. (2d) 56, 61, 117 N. W. (2d) 614. The problems of notice and inspection are not germane to the case at bar. The record makes it entirely clear that the theory of the defense was a complete denial of the existence of any unsafe condition. The defendants denied there was a defect; they did not contend that *if* there was a defect they were not aware of it. This position is consonant with Mr. Schmidt's testimony that he inspected the general area three or four times during the course of the evening.

### V. *Instructions as to Negligence.*

The trial court in its instructions on the subject of negligence used the general definition respecting ordinary care. The plaintiffs contend that the court erred in not instructing the jury relative to the higher duty that an operator of a business establishment has to take greater precautions to

secure the safety of his patrons. However, we note that after giving the general definition of negligence, the court went on to state as follows:

"In addition to this general definition of negligence, there are statutes enacted by the legislature for the safe maintenance of a place of employment such as the pavilion and parking lot in question. A person who fails to comply with such statutes is negligent as that term is used in the verdict and in the Court's instructions."

The trial judge subsequently quoted sec. 101.06, Stats., which asserts the duty of an employer to "furnish a place of employment which shall be safe for employes therein and for frequenters thereof . . . and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employes and frequenters."

When inquiring as to the negligence of an employer under sec. 101.06, Stats., the standard of care is different from that which applies to the negligence of a frequenter in Mrs. Petoskey's position. *Bobrowski v. Henne* (1955), 270 Wis. 173, 177, 70 N. W. (2d) 666. In *Mullen v. Larson-Morgan Co.* (1933), 212 Wis. 52, 57, 249 N. W. 67, the court held that the employer's compliance with common-law standards of ordinary care did not meet the requirements of the safe-place statute. In *Krause v. Veterans of Foreign Wars Post No. 6498* (1960), 9 Wis. (2d) 547, 554, 101 N. W. (2d) 645, we recommended that in framing the question of the special verdict in a safe-place case, trial courts use the word "negligent."

In our opinion, the standards of required care were adequately asserted in the instant instructions. Perhaps even greater clarity could be obtained in the typical safe-place case: After giving the general definition of negligence (Wis J I—Civil, Part I, 1005), the trial court might go on to state as follows:

"The definition of negligence which I have just given you applies to both the plaintiff and the defendant. However, in addition, the defendant as an employer also has the duty to comply with the provisions of the Wisconsin Statutes, which require an employer to maintain his premises as safely as the nature of the place reasonably permits. If the defendant fails to comply with such statutes, he is negligent, as that term is used in this verdict."

The plaintiffs also contend that the instructions were defective in failing to reflect Mrs. Petoskey's status as an invitee. In view of the fact that sec. 101.06, Stats., uses the word "frequenter" and not the word "invitee," we perceive no error in the trial court's having refused to give an instruction which was expressly directed toward business invitees.

The duty owed to a frequenter under the safe-place statute (sec. 101.06 and sec. 101.01 (11)) is a higher duty than the common-law obligation to an invitee. In Prosser, Law of Torts (2d ed.), p. 459, sec. 78, the author states, "The occupier is not an insurer of the safety of invitees, and his duty is only to exercise reasonable care for their protection." It was proper for the trial judge to use the statutory term "frequenter" in his instructions, and we are unable to find any valid objection to the instructions.

## VI. *The Violated Stipulation.*

The trial court permitted the defendant, Mr. Schmidt, to testify in contradiction to what his attorney had previously stipulated. The comment on the record made by the trial judge in ruling upon the objection makes it clear that he regarded the stipulation of the defendants' counsel to be conditional, and when the grounds upon which that condition rested became infirm, the court in its discretion permitted an attack upon the stipulated exhibit. The circumstances of

the stipulation and its subsequent attack are reflected in the following statement by the trial court:

". . . Mr. Regan asked Mr. Strnad whether the photograph was taken on the date represented by Mr. Strnad, and Mr. Strnad represented to Mr. Regan that it was, and upon that representation, the stipulation accrued.

"Now, it appears that there is a dispute by Mr. Regan's client and witness with respect to the correctness of the representation made by Mr. Strnad that the exhibit was taken and the photograph was taken on March 3."

The court thereupon permitted Mr. Schmidt to repudiate the stipulation, and we consider that it was in the discretion of the trial court under these circumstances so to do.

### VII. *Reversal in the Interests of Justice.*

The plaintiffs have asked for a new trial in the interests of justice based upon "the numerous errors that occurred." We do not find such to be the fact and, more particularly, are persuaded that a full and fair trial was had. There is no basis for this court's granting a new trial in the interests of justice under sec. 251.09, Stats. We are not persuaded that the damages are inadequate or that any prejudicial error was committed upon the trial.

*By the Court.*—Judgment affirmed.