Sandra KUNGLE, a Minor, b/n/f and Father, Arthur Kungle, and Arthur Kungle, Plaintiffs-Appellants,

v.

Wayne AUSTIN and John Jewsbury, d/b/a Tumblin Town, Defendants-Respondents.

No. 49970.

Supreme Court of Missouri, Division No. 1.

June 8, 1964.

Motion for Rehearing or to Transfer to Court En Banc Denied July 13, 1964.

Charles D. Tudor, Joplin, Edward V. Sweeney, Monett, for appellants.

Robert E. Seiler, Joplin, for respondents, Seiler, Blanchard & Van Fleet, Joplin, of counsel.

WELBORN, Commissioner.

█ Plaintiff Sandra Kungle, thirteen years of age at the time, was injured, on June 9, 1960, in a fall at the trampoline center in Joplin owned and operated by the defendants under the name of "Tumblin Town." Her claim for damages, in the amount of $35,000, brought through her father as her next friend, and her father's claim for $2,500 medical expenses incurred as a result of Sandra's injury were tried to a jury in the Jasper County Circuit Court, which returned a verdict for defendants. After their motion for new trial had been overruled, plaintiffs appealed to this court. In view of the amount sued for, we have jurisdiction of the appeal.

Defendants' trampoline center, located on West Seventh Street in Joplin, began operation on June 5, 1960. It consisted of 15 trampolines arranged in 3 rows of 5. The trampolines were numbered consecutively from 1 to 15. Each trampoline consisted of a rectangular braided nylon and rubber perforated mat, 6 ft. x 12 ft. in size. The center of the mat was marked with a white cross and not perforated. The mat was suspended over a 9 ft. x 15 ft. pit, 42 to 48 inches deep. A wooden framework, made of 2 x 12's attached to form an L, surrounded the edges of the pit. One side of the L was vertical to the ground and extended downward on the sides of the pit. The other side was horizontal with and lay on the ground. Attached to the wooden framework was a 9 ft. x 15 ft. steel frame. Steel coil springs, approximately 18 inches in length, extended from the steel frame to the mat. There were 16 such springs evenly spaced at each end of the mat and 32 along each side. The springs were attached to the mat on one end and at the other to the steel frame in eyelets on a flange extending from the frame. The springs held the mat taut and provided the energy which propelled users of the device into the air as they sprang or jumped upon it. As mentioned, the top 2 x 12 of the wooden framework lay flat on the ground. On top of the entire length of the four pieces of lumber surrounding each pit was a foam rubber mat covered with naugahide and fastened in position over the board by tabs with brass eyelets and by nails to the front and back of the board. The pad extended only to the edge of the 2 x 12's and did not extend over the metal frame or flange to which the springs were attached.

Sandra accompanied two 15-year-old girls, Joyce Miller and Jama Lewis, and the parents of the Miller girl to Tumblin Town on the evening of June 9, 1960. Sandra had not been there previously and had had no experience on trampolines. A charge of 40¢ was paid for each of the three girls for their admission to the trampoline area and their use of the devices. They were directed by an attendant to pads 4 and 9 which adjoined each other. Joyce Miller had been to Tumblin Town previously and received instructions from Mrs. Ytell, a physical education instructor whom the defendants employed to instruct persons in the use of trampolines. Joyce explained to Sandra the technique for the use of the device, showing her how to start and stop and do a knee drop. According to the plaintiffs' witnesses, Mrs. Ytell was present near the trampoline on which Sandra was jumping, but Sandra received no instructions from her. Defendants' witnesses, including Mrs. Ytell, testified that Sandra was given instructions by Mrs. Ytell.

Sandra jumped on trampoline 4 for approximately four or five minutes while Joyce was on 9. The two girls then exchanged trampolines and Sandra started jumping on 9. She testified that she "bounced around a couple of times * * * to get the feel of the trampoline" and then tried a knee drop. A knee drop is executed

by springing in the air on one's feet, landing on the pad on one's knees, rebounding into the air and landing on one's feet again. When she started the knee drop, Sandra was in the center of the trampoline, facing north. She made one knee drop successfully and started another. According to her testimony, as she dropped to her knees the second time, "I lost my balance and I pitched forward, and I tried to catch myself and I reached my hands out and when my elbows came into contact with the pad, it flew up and my arms slid under the stuffed place and my elbows down and my face hit the concrete."

Sandra acknowledged that she got off the center of the mat in executing the knee drops. She said that she was not jumping very high, between a foot and two feet, and that, on the first knee drop, she traveled to the north of the center of the mat "as much as it could be north after one jump."

Her face struck what she described as "the concrete, the back of the pipe." Her jaw was fractured and she lost several teeth. Her injuries required her hospitalization for several days. The petition charged the defendants with negligence in three regards: (1) failure to pad the pipe frame and that the bolsters or pads around the perimeter were not firmly attached; (2) failure to provide proper supervision by determining the proficiency of the invitees in the use of the trampoline device which was alleged to be inherently dangerous when used by an inexperienced person; (3) failure to give plaintiff warning of the dangers involved in using a trampoline device such as keeping balance, place on the mat to land, etc.

At the trial, plaintiffs' case was submitted by instructions charging that the defendants were negligent in failure to furnish the plaintiff with adequate instruction and in permitting the pads on the outer perimeter of the trampoline to be loose and not securely fastened so that when plaintiff fell forward, her hands came in contact with the pad, that the same thereupon moved out of position by reason of which her mouth struck certain hard portions, causing her to be injured. The defendants gave instructions setting up the defenses of assumption of risk, contributory negligence, lack of negligence on the part of defendants and the converse of plaintiffs' instructions. On this appeal three issues are presented by the plaintiffs relating to the instructions on which the case was submitted. The defendants, in addition to denying error in any of the respects urged by the appellants, contend that, in any event, plaintiffs failed to make a submissible case and, therefore, the judgment should be affirmed.

In support of their contention in the latter regard, respondents have cited four cases involving injuries to trampoline users, in each of which plaintiff was held, as a matter of law, not entitled to recover: Respondents contend that the principles of those cases apply here and such principles, as a matter of law, preclude recovery by the plaintiffs. Respondents state that these are the only four cases in appellate courts involving trampoline injuries with which they are familiar and we find no other.

The first case is Myers v. Sky Jump, Inc., decided by the Tennessee Court of Appeals on August 8, 1962. Apparently, this decision is unreported; however, a copy of the court's opinion has been included in the respondents' brief. A 14-year-old girl, who had watched an older brother on a trampoline for about an hour on a prior visit, on her second visit to the center, while using the trampoline herself, fell as she was attempting to get off the mat. She charged negligence by failure to provide proper instruction and failure to provide a pad or cover for the springs into which she fell. The court found no negligence on the part of the defendant. The court also found plaintiff guilty of contributory negligence as a matter of law and that she had assumed the risk of the injury that she received.

The second case is Williams v. Lombardini, 38 Misc.2d 146, 238 N.Y.S.2d 63. There the plaintiff, a 19-year-old college

student, was injured when he tried to do a forward flip on a trampoline. He went too far from the center of the mat and instead of landing on his feet struck his nose on the edge of the pit. Defendant's motion for summary judgment was sustained on the ground that plaintiff assumed the risk incidental to the use of the device. The court stated:

" * * * One of his age, education and intelligence must be presumed to have foreseen that when he propelled himself through the air in a forward flip or somersault by means of this device, he ran the risk of landing either on the frame work or beyond in such a fashion as to cause injury."

The third case, Daniel v. S-Co Corporation (Jumpin Gyminy Trampoline Center), 124 N.W.2d 522, was decided by the Iowa Supreme Court. The plaintiff, a 35-year-old man started to jump on a trampoline. After about five jumps, he stated that he remembered "starting to bounce and the next thing I knew was waking up over on the side of the pit, lying, I don't remember whether on my back or my stomach." Plaintiff's petition charged negligence by failure to warn as to inherent dangers in the device, failure to provide trained supervisory personnel to instruct and protect the plaintiff and permitting plaintiff, an inexperienced person, to use the device without instruction or supervision. In reversing outright a verdict of the trial court in favor of plaintiff, the court said (124 N.W.2d, 1. c. 526):

" * * * There was no hidden danger involved in the trampoline. It was an athletic exercise of jumping upon the mat. It is true it was plaintiff's first experience in this type of amusement. The complete mechanism was in full view of plaintiff and the instructions were clear and definite. * * *

"As far as instruction and supervision is concerned the posted notice stated in plain language that if plaintiff desired instruction he could ask for it.

He testified categorically he did not ask for any instruction. As far as supervision is concerned it was not necessary that defendant place someone at every trampoline to observe the users. As near as we can tell from plaintiff's evidence, his fall would have happened as it did, even if defendant had a dozen supervisors surrounding the trampoline and watching plaintiff."

The fourth case cited by respondents is Ford v. Brandan, Tenn.App., 367 S.W.2d 481. In that case a 16-year-old boy was injured. A companion had pushed the plaintiff, causing him to fall. Plaintiff's suit was based on negligence by failure to give instructions, failure to warn plaintiff or properly supervise his use of the trampoline and failure to prevent horseplay. The court upheld a directed verdict for defendants on the grounds that there was no proof of negligence, that plaintiff had assumed the risk of the injury and that the injury was due to horseplay which the defendants were not required to foresee.

■ We do not believe that any of these cases are wholly analogous to the present case. Leaving for the present the issue of lack of instruction, plaintiffs' charge of negligence in the construction and maintenance of the trampoline was based specifically on a charge of failure properly to affix the padding on the framework. Plaintiffs' evidence, if believed by the jury, would have supported a finding that the pad at the end of the trampoline on which she fell was loose and not firmly attached and that failure to attach the pad properly was negligence and that such negligence was a proximate cause of her injury.

■ Obviously, the edge of the wooden and metal framework surrounding the pit was a potential source of injury to persons using the mats. To guard against such injuries the defendants placed padding on the wooden portions. Persons using the mats were entitled to rely on the proper attachment of the pads to perform the func-

tions for which they were intended. Falling on the pad may have been one of the usual hazards of jumping on a trampoline. However, we would not say that, as a matter of law, falling on the pad and sustaining injury because the pad had not been properly attached to the framework is a usual hazard to which the jumper voluntarily exposed himself. The user in such a situation is in a position similar to that of the baseball fan who seeks protection behind a screen provided for such purpose, but who, because of the defective construction of the screen is not afforded the protection which is sought. An injury from a batted ball in such circumstances is not one of the risks which the patron of a baseball game assumes. Edling v. Kansas City Baseball and Exhibition Company, 181 Mo.App. 327, 168 S.W. 908. A fan in such situation is entitled to rely upon the protective device performing the function for which it was obviously designed. Similarly, a trampoline user should be permitted to rely upon protective pads affording the protection which their proper installation would provide. Therefore, we reject the respondents' contention that the plaintiffs here failed to make a submissible case on this charge of negligence.

As for the failure to provide instruction, we believe that plaintiffs did not make a submissible case of negligence on that issue. Sandra testified that she received no instruction from any employee of defendants. However, her testimony was that Joyce Miller, whom she had accompanied to the trampoline center, had been there before and explained to her how to start and stop the device, and how to do a knee drop. Sandra was an intelligent child and, according to her testimony, she realized, without being told, that she should stay in the center of the mat, that she should keep her balance. She also realized that the whole idea of using the device was to stay on the mat at all times and that there was nothing hard to strike if she stayed on the mat. She said that she had the common sense to figure out the importance of staying in the center of the mat, but that, when she did the knee drops, she was moving toward the north end of the mat, away from the center.

■ Plaintiff Sandra's testimony revealed her awareness of the propensities of the trampoline and particularly the necessity of remaining in the center of the mat. There is no basis for any assumption that instruction would have made her any more aware of the possible effects of failing to stay in the center. The plaintiff obviously appreciated that her failure to do so involved the possibility of falling. As a participant in the sport or game, even though a minor, the defendants did not owe her any duty to warn her of the obvious perils of the use of the device. "One who takes part in such a sport accepts the dangers that inhere in it so far as they are obvious and necessary, just as a fencer accepts the risk of a thrust by his antagonist or a spectator at a ball bame the chance of contact with the ball." Murphy v. Steeplechase Amusement Co., 250 N.Y. 479, 482, 166 N.E. 173, 174. Furthermore, while aware of the hazards inherent in the operation of the device, plaintiff was also aware of the fact that instruction was available. She testified that, although the instructor was at the trampoline on which she was jumping, she did not ask the instructor for any assistance because she "had nothing to ask her."

■ In view of all of these circumstances appearing in plaintiffs' evidence, we are of the opinion that the submission of a charge of negligence in failing to provide instruction was not supported by the evidence and that the case should not have been submitted to the jury on that theory. Daniel v. S-Co Corporation (Iowa), supra, 124 N.W.2d, 1. c. 526.

Appellants' first ground of error is that, in the defendants' instruction on contributory negligence, the jury was told that Sandra was required to "exercise ordinary care for her own safety." Appellants con-

tend that Sandra, being only thirteen years of age at the time of the accident, was required to exercise only the care which would be exercised by a child of like age, capacity and experience under like circumstances and that the respondents' instructions imposed upon her the standard of care applicable to adults.

There was no instruction given defining "ordinary care" as applied to Sandra. Plaintiffs offered an instruction defining "ordinary care," but it was limited to the defendants and neither side purported to define the term as applied to Sandra. There can be no question that an instruction defining the standard of care to which her conduct was required to conform would have been proper. Warren v. Kansas City, Mo.Sup., 258 S.W.2d 681, 683–684(3). However, failure to give such direction is nondirection, not misdirection. Plaintiffs, if dissatisfied with the defendants' instructions because of the lack of definition of "ordinary care" as applied to Sandra, had the right to offer an instruction on the subject as the plaintiff did in the cases of Hosford v. Clark, Mo.App., 359 S.W.2d 424, and Beebe v. Kansas City, 327 Mo. 67, 34 S.W. 2d 57, cited and relied upon by the appellants here. Having failed to offer such an instruction, the appellants cannot now claim error on the part of the trial court. Henson v. Jasinsky, Mo.Sup., 251 S.W.2d 601, 603(1); Thurman v. St. Louis Public Service Company, Mo.Sup., 308 S.W.2d 680, 687(10). The absence of an instruction defining the standard of care applicable to Sandra and the limiting of plaintiffs' instruction defining "ordinary care" to the defendants preclude conflict which provided the basis of error in Hosford v. Clark, supra, relied upon by appellants. In Dorlac v. Bueneman, Mo.App., 129 S.W.2d 108, also cited by appellants, there apparently was no contention advanced that failure of plaintiff to offer an instruction defining the standard of care for a minor precluded error in the instruction given which required the minor plaintiff to "exercise ordinary care."

The plaintiffs' next claim of error relates to Instruction No. 12, offered by the defendants and given by the court. That instruction reads as follows:

"The Court instructs the jury that no person is held by the law to a higher degree of care than is exercised by other careful and prudent operators in the trade or business which said person is engaged and that a person in conducting his business in the way that other careful and prudent operators in a like business do, has measured up to the standard required by the law.

"Therefore, you are instructed that if you find from the evidence that the defendants as operators of Tumblin Town maintained, operated and supervised said trampoline center and equipment the same as such trampoline centers and equipment were usually and customarily maintained, operated and supervised by other careful and prudent operators in said business, as shown by the evidence, then and in such event the defendants cannot be guilty of negligence or failure to exercise ordinary care within the meaning of these instructions, and if such is your finding, then plaintiffs are not entitled to recover, and your verdict must be favor of the defendants."

Although the plaintiffs' principal contention with respect to this instruction relates to the sufficiency of the evidence to warrant its being given, the plaintiffs also attack the correctness of such an instruction as a proposition of law, because it makes the conduct of other prudent operators in the same business the legal standard of care for the defendants.

The proper test of the defendants' conduct as negligence was whether or not they exercised the care which a reasonable person would exercise under like circumstances. Restatement of Torts, Section 283, page 741.

■ Whether or not a person's conduct in the operation of a business enterprise conforms to such standard may, in some instances, be evidenced by his conforming or failing to conform to the established practices and customs of the business in which he is engaged. Olds v. St. Louis National Baseball Club, Mo.App., 119 S.W.2d 1000, 1005. However, such evidence may not be employed to fix the standard of conduct required by law. As stated in Gatzke v. Terminal Railroad Association of St. Louis, Mo.Sup., 321 S.W.2d 462, 466 (2–4), cited by defendants:

> "It is said that usual practices, usage or customs may, in a given case, be shown as evidence of due care, although they are not the standards of due care, neither do they conclusively demonstrate due care. Specifically, it may be said that the exercise of due care requires precautions which a reasonably prudent employer would have taken in given circumstances, even though other employers may not have taken such commensurate precautions. What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not. Grosvener v. New York Cent. R. Co., 343 Mo. 611, 123 S.W.2d 173; Cleghorn v. Terminal R. Ass'n of St. Louis, Mo.Sup., 289 S.W.2d 13; Texas & Pac. Ry. Co. v. Behymer, 189 U.S. 468, 23 S.Ct. 622, 47 L.Ed. 905. But, as stated, usual practices, usage or customs may, in given cases, be shown as evidence of due care."

Instruction No. 12 made the construction and operation of other trampoline centers the standard of care for the defendants' construction and operation of "Tumblin Town." In so doing, it went beyond the proper purpose of evidence in such regard and was erroneous. 2 Wigmore on Evidence (3rd ed.), Section 461, page 489. See Maynard v. Buck, 100 Mass. 40, 47–48, cited by Wigmore.

In support of this instruction, the defendants cite Murphy v. Electric Park Amusement Co., 209 Mo.App. 638, 241 S.W. 651, which disapproved an instruction along these lines because it omitted the words "careful and prudent" with reference to other operators and inferred that had such language been included the instruction would have been good. Such a requirement is actually superfluous. See comment in annotation in 137 A.L.R. 611, 614. That was demonstrated in the present case. There was nothing to show that the other operators with whom defendants compared their operation were "careful and prudent" operators and it would not have been possible to make that a subject of inquiry on the trial. The defendants acknowledge that they would not have been permitted so to characterize such operations. Disbrow v. People's Ice, Storage & Fuel Co., 170 Mo.App. 585, 157 S.W. 116, 117. Consequently, the standard which, under the evidence, the instruction would provide, is, in the final analysis, the conduct of other operators. "(T)he legal standard of care, that is, the care of an ordinarily prudent man, is an ideal established by the law, without reference to actual usage which may or may not conform to the standard." Note, 137 A.L.R. 615.

We further note that the other cases cited by defendants, Fairfield v. Bichler, 195 Mo.App. 45, 190 S.W. 32, 34, and Schaum v. Southwestern Bell Telephone Co., 336 Mo. 228, 78 S.W.2d 439, 442, were master and servant cases. As pointed out in Zesch v. Abrasive Company of Philadelphia, 353 Mo. 558, 183 S.W.2d 140, 144, 156 A.L.R. 469, "Usage is of more import in determining the gauge of care of a master than of persons in some other relations —this may be due in some measure to the rule of the law of master and servant that the servant assumes the ordinary risks of his work."

■ The plaintiffs' final assignment of error relates to the giving of defendants' Instruction No. 10 on assumption of risk.

The objection briefed which was raised in their motion for new trial was that such instruction should not have been given because of the evidence of defendants' negligence. We believe that the decision in Terry v. Boss Hotels, Inc., Mo.Sup., 376 S.W.2d 239, answers the objection here presented. However, we again call attention to the caveat in Terry that an instruction on assumption of risk is properly given in only an exceptional case. In view of the only objection here properly before us, we will not endeavor to pass upon whether or not this is such case.

For error in giving Instruction No. 12, the judgment is reversed and the case remanded.

COIL and HOUSER, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur except HENLEY, J., not sitting.