MARY McCARTY v. ST. LOUIS TRANSIT COMPANY, Appellant.

**Division One, December 21, 1905.**

1. **NEGLIGENCE: Death of Husband: Verdict for $500: New Trial.** A statutory suit for $5,000 against a street railway company for negligently placing an obstruction in a public street, which resulted in the death of plaintiff's husband, who was a thoroughly upright and skilled worker, earning $90 per month, resulted in a verdict of $500 for her. *Held,* that the trial court did not err in setting that verdict aside on the sole ground that the award of damages was inadequate.

2. **VERDICT: Province of Jury: Discretion of Judge.** A jury may not give any verdict it pleases. Its verdict is subject to the approval of the trial judge, who may exercise a sound judicial discretion in the matter, and unless he clearly abuses that discretion his act in granting one new trial will not be accounted error.

3. ———: **Law Case: Advantage of Trial Judge.** The trial judge stands peculiarly close to the fountain-head of justice. To him it is given to hear the intonation of the voice of the witness, to see his manner, his cast of countenance, the glance of his eye, the behavior of the jury, their intelligence, their attention and the whole network of small incidents creating an atmosphere about the trial, none of which can be preserved in a bill of exceptions.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher,* Judge.

AFFIRMED.

*Boyle & Priest, George W. Easley* and *Edward T. Miller* for appellant.

The court erred in sustaining plaintiff's motion for a new trial, and in granting plaintiff a new trial of the

cause. Sec. 2866, R. S. 1899; Pritchard v. Hewitt, 91
Mo. 547; Leahy v. Davis, 121 Mo. 227; Dowd v. Air
Brake Co., 132 Mo. 579; Railroad v. Judd, 20 Ky. L.
1978; 1 Joyce, Damages, secs. 511, 527; 2 Graham &
Waterman on New Trials (2 Ed.), 451. Plaintiff's in-
struction as to the measure of damages is as follows:
"If the jury find for the plaintiff they shall assess her
damages at such a sum as they may believe from the
evidence will be a fair compensation to her for the loss
of the support, care and maintenance of her husband,
caused by his death, not exceeding $5,000." Section
2866, Revised Statutes 1899, leaves the amount of dam-
ages (within $5,000) to be fixed by the jury as they
deem fair and just with reference to the necessary in-
jury, having regard to the mitigating or aggravating
circumstances attending the injury. There can be no
certain rule of admeasurement for their guidance. The
amount is peculiarly within their province, and their
verdict should not be disturbed unless it be shown con-
clusively to have resulted from passion or prejudice,
misconduct or palpable mistake. Nothing of this char-
acter appears in the record. The verdict is not a ver-
dict for nominal damages, but a verdict for substantial
damages and such a verdict as was within the province
of the jury to make. The presumption is that it repre-
sents their honest judgment as to the amount plaintiff
should recover, and in such cases, where the damages
are not clearly defined, it is the policy of the law that
the jury's estimate rather than the equally undefined
estimate of a judge should prevail. In order to over-
come this presumption and policy, it is necessary that
prejudice or passion, misconduct or mistake on the part
of the jury should be shown, and in the absence of such
showing it was error for the court to substitute its judg-
ment for that of the jury. 1 Joyce on Damages, sec.
527; 1 Gra. & Wat. on New Trials (2 Ed.), 451.

LAMM, J.—Cornelius McCarty was the husband of plaintiff, concededly performing his marriage contract and marital duties pertaining to her care and support. He was an employee of the St. Louis Fire Department and, at the time in hand, the driver of truck No. 12, said truck being a long-coupled wagon, twenty-seven feet between axles, used for carrying ladders to a fire. His age was forty-nine years and he was earning "eighty-nine dollars and a dime" per month (his real salary being $90 per month, but ninety cents were deducted for a firemens' pension fund). His health was excellent, his sobriety and industry unquestioned, and he is outlined by the record to be one of the best firemen in the department—an all 'round good man.

At two o'clock in the morning of December 15, 1902, a night of storm and gloom, as described by the witnesses, with sleet and drizzling rain falling, a fire alarm was sprung and McCarty started with his truck to the fire. While in the line of his duty, going down grade on Florissant avenue at a rapid speed—a "fire-alarm" speed—but having his horses under control, his wagon struck an obstruction in the street, and he was thereby pitched forward and down, striking on his head, and instantly killed. The obstruction consisted in a temporary switch, with a frog appendage laid on top of appellant's track and the street grade, and intended for temporary purposes, in that repairs on a bridge some distance away were in progress and the two street railroad tracks laid on Florissant avenue, one an outgoing and the other an incoming track, were by said switch temporarily converted into one track for a certain distance, over which both incoming and outgoing cars passed.

The switch was about fifty feet long and arose above the track—some of the witnesses say one and one-fourth inches, some say two inches, and some four inches. The obstruction commenced thin and the cars mounted the switch, gradually feeding up to the full

height of the obstruction above the surface of the street. However. this may be, a V-shaped, raised obstruction was formed, against or in which a wheel of McCarty's truck struck with the aforesaid result.

An ordinance of the city of St. Louis was pleaded in the petition and introduced in evidence which, *inter alia,* provided that "and every person who shall occupy or cause to be occupied any portion of any public street, alley, highway or public place with . . . any obstruction, shall cause one red light to be securely and conspicuously posted on or near such . . . obstruction; provided such obstruction does not extend more than ten feet in length, and if over ten feet and less than fifty feet, two red lights, one at each end, shall be so placed, . . . and shall keep such lights burning during the entire night."

Evidence, hopelessly conflicting, was introduced pro and con on the character and location of the lights kept by appellant at this obstruction. It is uncontradicted that a small shanty was close by, intended for protection of the employee attending to the lights and signaling cars, against the weather. Some of the evidence was to the effect that there was no red light displayed at all, but that one or two pale or white lights were displayed. Some of the evidence indicated that there was one red light displayed, but that it was, at the time, over close to said shanty and quite a distance from the obstruction. Some of the evidence indicated there were two pale or white lights, one at each end of the switch, and another, a red light, about midway between the two railroad tracks and the termini of the switch. The evidence on the size and distinctness of these lights was also conflicting. None of the witnesses saw two red lights, as provided by ordinance when an obstruction was over ten feet long. None of the evidence indicated that the red light displayed was at either end of the obstruction; and, furthermore, the evidence indicated that the obstruction

had existed for some time, and that the usual danger signal in the city of St. Louis was a red light, and, moreover, tended to show that a white light did not have a danger significance.

This suit is based upon Revised Statutes 1899, sections 2865 and 2866, the latter of which provided that "the jury may give such damages, not exceeding five thousand dollars, as they may deem fair and just, with reference to the necessary injury resulting from such death . . . and also having regard to the mitigating and aggravating circumstances attending such wrongful act, neglect or default;" and the city of St. Louis, as well as the St. Louis Transit Company, were made parties defendant.

The defense interposed by appellant was a general denial, fortified by a plea of contributory negligence.

On uncriticised instructions the jury returned a verdict acquitting the city, but against appellant company for $500, which verdict was set aside on plaintiff's motion for a new trial, the reason assigned by the learned trial judge being that the damages awarded were inadequate.

From the order granting a new trial the St. Louis Transit Company appealed.

There is no brief by respondent. By that of appellant only one insistence is made, to-wit, that the verdict was a substantial one—a verdict the jury was authorized to render and which, to attaint or disturb, was error, *nisi*, because thereby appellant is subjected to a new inquisition of damages and placed in danger of being mulcted in $5,000.

Is this assignment of error well made? We think not. Because: neither side asked nor did the court give any instruction on mitigation or aggravation, as seems to be required when those elements are in the case and presented to the jury. [Rains v. Railroad, 71 Mo. 164; Nagel v. Railroad, 75 Mo. 653; Nichols v. Winfrey, 79 Mo. 544; Parsons v. Railroad, 94 Mo. 286.] A

natural inference from this omission is that in the opinion of the trial court, as well as in that of the trial counsel, the case admitted of no such instruction. A painstaking and close examination of the evidence leads us to sympathize with that view. This being so, and the case being admittedly one for the jury, it left the case, so far as this appellant is concerned, stand or fall on its plea of contributory negligence. Now, it is not contended here that such plea should be sustained, under the facts, as a matter of law; nor is it contended by appellant that the verdict is a nominal verdict, that is to say, practically one for the defendant company, except on a matter of costs; nor is it contended that the verdict should have been for the defendant company— the stout and sole insistence of appellant, as said, is that the verdict was substantial, was right, and that it was reversible error to meddle with it.

Considering the case from this point of view, it must not be lost sight of that a jury may not give any verdict it pleases. Its verdict is first subject to the trained judicial discretion of the trial judge, and his judicial discretion, so exercised upon the verdict, will not be interfered with on appeal except it be unmistakably unwisely exercised. [Bank v. Armstrong, 92 Mo. l. c. 279, et seq; Bank v. Wood, 124 Mo. l. c. 76-7; Kuenzel v. Stevens, 155 Mo. l. c. 285; McCloskey v. Pulitzer Pub. Co., 163 Mo. l. c. 33, and cases cited.] The wise exercise of this judicial discretion on the part of circuit judge has always been encouraged by this court—a discretion exemplified by Justice GRIER in his celebrated dictum that "it takes thirteen men in this court to steal a man's farm; twelve in the box and one on the bench."

The trial judge stands peculiarly close to the fountain-head of legal justice. He is the high priest presiding at the very altar of the temple. To him it is given to hear the intonation of voice of a witness, to see his manner, his cast of countenance, the glance of his eye,

the behavior of the jury, their intelligence, their attention and the whole network of small incidents creating an atmosphere about a case and tending possibly to a perverted result or otherwise, none of which can be preserved in the bill of exceptions and sent here, and in him, therefore, should exist the courage to prevent a miscarriage of right. His viewpoint is entirely different from that of an appellate court. See the animated language of WAGNER, J., in Reid v. Insurance Co., 58 Mo. l. c. 429 et seq.

The views of GAMBLE, J., speaking for this court in Garneau v. Herthel, 15 Mo. 191, are apposite. Thus: "All persons, familiar with trials, must know that it is utterly impossible to bring before this court, upon paper, a real representation of the trial as it took place. The manner, the temper, the character of witnesses, as known to the jury, can not be spread upon paper; and the words of a witness, in whose testimony neither the jury nor the court had the slightest confidence, will read as well, and appear entitled to the same confidence when written upon the record, as would the language of the most impartial, upright witness in the world. We can not suppose that the courts, trying causes, are deficient in the firmness necessary to set aside verdicts when," etc.

Happily, by the aid of a jury's discretion to start with, tempered and controlled by the discretion of the trial judge, and afterwards supervised by the discretion of the appellate courts, wrongs may be ultimately righted, so far as may be, in the affairs of men. The bitter notion of Lord CAMDEN relating to judicial discretion, to-wit: "The discretion of a judge is the law of tyrants; it is always unknown; it is different in different men; it is casual, and depends upon constitution, temper, passion. In the best, it is oftentimes caprice; in the worst, it is every vice, folly and passion to which human nature is liable," is not the modern view, if applied to judicial discretion in supervising verdicts. The

modern view is that by the discretion of the jury, plus the discretion of the trial judge, plus the discretion of the appellate court, the "golden mean," referred to by Horace and Publius Syrus and dreamed of by all good philosophers, may be somewhat approached.

In this case, having found that the defendant was guilty of negligence, and that deceased was not guilty of contributory negligence, the jury placed an estimate on the injury done to Mrs. McCarty in the loss of a husband in the prime of life, who was supporting her, who had an earning capacity of $90 a month, who was no drinking trifler, who was industrious and stood well as a citizen—for all of these solaces lost—$500. The trial judge thought a citizen of that character was worth more as the head of a family and a husband, and so do we.

Appellant relies on three cases: Pritchard v. Hewitt, 91 Mo. 547; Dowd v. Air Brake Co., 132 Mo. 579; and Leahy v. Davis, 121 Mo. 227. But none of these cases are kin to the case at bar.

The Pritchard case was a malicious assault and shooting. The defense, *son assault demesne.* The verdict, one dollar. In that case, it must be noted, the trial judge refused to grant a new trial, and Brace, J., speaking to the point said: "Nevertheless, in that record, we can see how the jury might well, from the evidence, have found that, although the defendant was not justified in his action, yet that the plaintiff also was not without fault, and come to the conclusion that, under all the circumstances, it was not a case for substantial damages."

In the Dowd case, there was a compound fracture of the leg and a verdict for $200. In that case the trial court refused to interfere and the refusal of this court to interfere was based upon the ground that the trial court has better opportunity to know whether the verdict should be set aside than this court.

In the Leahy case a minor was killed. He was six-

teen years and ten months old.  Suit was brought by
the parents.  No evidence was given of the boy's health,
or characteristics, or adaptation to business, or habits
of industry, or economy.  The jury were not advised
whether he contributed to the support of the family or
whether he lived with his parents or boarded.  All that
appeared was his age and the fact that for two or three
months he had earned $7.50 a week.  The recovery was
$175.  The evidence furthermore indicated that the boy
was guilty of ''extreme carelessness'' in walking into
an elevator shaft.

Again:  This court will not interfere with the dis-
cretion of the trial court in granting one new trial on
a question of fact, except in a case where the plaintiff
would not be entitled to any recovery.  [Haven v. Rail-
road, 155 Mo. 216.]

The judgment and order of the court setting aside
the verdict and granting Mrs. McCarty a new trial is
affirmed.

All concur, except *Brace, P. J.*, absent.