THERESA WALSH, Administratrix of RUTH MURRAY, Appellant and Respondent, v. SOUTHWESTERN BELL TELEPHONE COMPANY, JOHN J. REARDON REALTY COMPANY, Appellant and Respondent. —52 S. W. (2d) 839.

Division One, September 3, 1932.

120

*Earl H. Painter, E. W. Clausen, William F. Coyle* and *James A. Waechter* for Southwestern Bell Telephone Company; *J. W. Jamison* of counsel.

*Joseph C. McAtee* and *Philip A. Foley* for respondent.

*John T. Sluggett, Jr.,* for John J. Reardon Realty Company.

STURGIS, C.—[1] Ruth Murray, plaintiff's intestate, brought this suit for personal injuries sustained by her by reason of a plate glass window falling on her while walking along the sidewalk of a public street in St. Louis in front of a building owned by defendant Southwestern Bell Telephone Company. She died after the trial and judgment and the case has been revived for the purpose of a hearing here in the name of her administratrix. In referring to plaintiff, we mean Ruth Murray, who was injured and prosecuted this suit in

her own name in the trial court. At the time of plaintiff's injury the other defendant, John J. Reardon Realty Company, was occupying as a tenant the room of the Telephone Building from which the plate glass window in question fell on plaintiff, and plaintiff in her suit made both the landlord and tenant parties defendant, each being charged with negligence in maintaining the plate glass window in such unsafe condition that it fell without apparent cause on plaintiff when she was merely walking along the sidewalk. The case proceeded to trial and was submitted to a jury against both defendants, resulting in a verdict for plaintiff against the Southwestern Bell Telephone Company in the sum of $4,500 and in favor of the defendant John J. Reardon Realty Company. Thereupon the Telephone Company filed its motion for new trial, which the court sustained, and plaintiff has appealed from the order granting a new trial to that company. That appeal was granted to the St. Louis Court of Appeals, and properly so except for the fact that the plaintiff thereupon filed her motion for new trial against the defendant Realty Company. That motion was also sustained, resulting in an appeal by the Realty Company, which was properly granted to this court as the suit is for $20,000 damages. On proper motion in the Court of Appeals, the appeal of the Telephone Company was transferred to this court on the ground that the granting of an appeal to two different parties in one case does not make two cases for hearing in the appellate court or courts, but that it remains one case on appeal, and when the appeal of either appealing party vests jurisdiction in this court, the whole case must be heard here. [Morton v. Southwestern Telegraph & Telephone Co., 280 Mo. 360, 217 S. W. 831, 833; Sandusky v. Sandusky, 265 Mo. 219, 232; Connelly v. Railroad, 169 Mo. App. 272, 289.] It is pointed out in these cases that there can be only one final judgment in a case disposing of same as to all parties, and, while any or all of the parties may appeal if aggrieved by the judgment, it is yet one case on appeal and the separate appeals must be disposed of by one appellate court. [Snoqualmi Realty Co. v. Moynihan, 179 Mo. 629, 634, 78 S. W. 1014.]

We also observe in this connection that, on the erroneous theory that two appeals in one case make two cases for hearing in this court unless consolidated, each appeal has been separately docketed and each appellant has separately perfected his appeal as a separate case in this court, each having filed a short transcript, separate abstracts, etc. A good many cases come to this court in this shape, causing useless expense and confusion. Such cases are usually consolidated here on motion of one party or on suggestion that the two cases be heard as one. The proper practice, however, is for the parties appealing to keep in mind that separate or cross appeals in

the same case do not make separate cases in the appellate court. There is properly only one case in that appellate court which has jurisdiction as determined by the appeals when considered as one and not separately. We have a statute indicating and to some extent governing the procedure on cross appeals in the same case, which provides: "Where a writ of error is sued out or an appeal is duly taken by both parties to review the judgment or decree of a lower court, a transcript or abstract of the record filed in the superior court by either appellant or plaintiff in error may be used on both appeals or writs of error, and both shall be heard thereon in the same manner as if transcripts or abstracts had been filed by both sides: *Provided*, the party taking the last appeal on the record, or suing out the later writ of error, shall tender or pay to the clerk where a complete transcript is sent up, or to the opposing party where only an abstract of the record is filed in the superior court, one-half the cost or expense of such transcript, or of printing the abstract of the record." This clearly contemplates that in cross appeals or appeals by more than one party, the case retains its unity throughout the appeal and should be docketed in the appellate court as one case and only one transcript or abstract of the record filed. If the party taking the first appeal as shown by the record prepares and files the abstract of the record, as the statute contemplates, then the party last appealing may avail himself of such abstract only by paying half the cost of printing the same. Of course, the other appellant would have the right to print an additional abstract of the record as provided for respondents, and the correctness of same may be challenged and determined in the same manner. Each party would, of course, prepare his own statement, brief and argument. Where there is cross appeals in a case, there should be no occasion for consolidating or hearing together such cross appeals as there is properly only one case, and the record should be prepared and presented on that theory. In the present case, as we have said, the two appeals have been consolidated, but we have two abstracts of the record, each presented by an appellant and each perhaps correct as far as it goes, but neither, at least when taken alone, "setting forth so much of the record as is necessary to a complete understanding of all the questions presented for decision" as required by our rules.

We gather from the record these facts: The defendant Telephone Company owned at the time of plaintiff's injury and of the trial a large building on North Tenth Street in St. Louis, parts of which at least were rented to tenants, and at the time of plaintiff's injury the defendant Reardon Realty Company had leased and was occupying a room used as a real estate office fronting on Tenth Street and designated as No. 111 North Tenth Street. This room or office had

a plate glass front, a part of which consisted of a plate glass some seven or eight feet long and near nine feet high, held in place by a metal frame. As plaintiff was walking along the sidewalk in front of this building and office on May 11, 1930, this glass fell out, striking plaintiff on the head and shoulders, and from which she received various injuries. She was picked up by a passer-by and taken into the Telephone Building where she received first aid treatment from a doctor called by the Telephone Company. She was then taken home and received medical attention there. The falling of the glass from the window occurred on Sunday and no one was in the real estate office at the time. The Realty Company first learned of the window falling out and plaintiff's injury the next day, at which time the Telephone Company had covered up the office front to protect it from exposure. The plaintiff knew little, if anything, about the cause of the glass falling from the window. She identified the building by a large sign over the entrance reading "Southwestern Bell Telephone Company," and the room or office from which the glass fell by a sign reading "John J. Reardon, Inc." Her petition, other than formal matters and a description of her injuries and suffering, charged in a general way only that at the time of her injury the Telephone Company maintained and operated the building on Tenth Street in St. Louis, and that the defendant Realty Company occupied this room of the same under contract of rental; that said defendants at said time and place "maintained a large plate glass window in said building and carelessly and negligently caused and permitted same to fall out of and from said building and onto plaintiff on the 11th day of May, 1930, while plaintiff was walking by said building and was exercising due care for her own safety, and that at said time she was lawfully passing along on said sidewalk."

The answers of the two defendants were each general denials, which, under the undisputed facts as to ownership of the building by the Telephone Company and the occupancy of the room from which the glass fell by the Realty Company, and that it did so fall without any apparent or known cause, striking the plaintiff while she was walking by on the sidewalk, without any fault of hers, amount to a separate denial by each defendant that it "negligently maintained" this glass window at the time and place mentioned. The plaintiff's evidence sustained but was no broader than her petition, in that in addition to the nature and extent of her injuries and suffering therefrom she merely proved that she was walking along the sidewalk passing the Telephone Building and the office room occupied by the Realty Company when the plate glass of the front window fell out and struck her.

Giving our attention to plaintiff's appeal from the order of the trial court granting the defendant Telephone Company a new trial on the jury's verdict in plaintiff's favor against that company, we find that such new trial was granted on the. ground specified in the motion for new trial, "because the verdict is against the evidence." This is taken by both parties as meaning against the weight of the evidence. And such defendant also insists that such motion for new trial should have been sustained for refusal of the court to sustain a demurrer to the whole evidence, which means that there is no substantial evidence to sustain the verdict for plaintiff against the Telephone Company. Attending to this last contention first, we find that this defendant does not contend that plaintiff's evidence, or all the evidence rather, fails to show any negligence or liability of anyone causing plaintiff's injury, but rather that the evidence fails to show any negligence of this particular defendant, or, more properly, conclusively shows defendant's non-liability. Plaintiff's case proceeds on the theory of *res ipsa loquitur*, that is, that the fact of and the circumstances attending the accident are such that they speak or show negligence, or that an inference of negligence may be properly drawn therefrom. As defendant's learned attorney says in his brief, "The rule in this State is that the doctrine of *res ipsa loquitur* is applicable in cases where the facts show that the mere occurrence of the injury or accident implies a breach of duty on the part of defendant, or, in other words, here tends to show some neglect or omission of duty as the proximate cause of the injury. Plaintiff tried her case on this theory. Her proof was that the defendant Reardon occupied the premises in question under a lease from the Telephone Company (respondent here) and that plaintiff was injured as a result of the falling of glass from the window on the premises occupied by the tenant Reardon."

In 13 Ruling Case Law, 443, speaking of injuries to persons on highways, this is said: "This doctrine (*res ipsa loquitur*) has frequently been applied in cases where it is sought to hold the owners of property abutting on the highway liable for injuries to travelers, as, for example, where one is injured by reason of the existence of coal holes, trapdoors, and the like, maintained in a sidewalk, by the fall of lumber piled in a street, by the fall of a building, or of a portion thereof, by the falling of objects from a building, or of ice and snow from its roof, or by the fall of projecting awnings or signs."

In Kilroy v. St. Louis, 242 Mo. 79, 85, 145 S. W. 769, where a boy stepped on the covering to a manhole in the sidewalk leading to a cellar, which covering it was shown had recently been substantially constructed of good material, etc., the court said: "The

boy testified that just before stepping on the slats he noticed them and they seemed in good condition. But as to the condition of the grating the prominent fact is that when the boy stepped on it, it broke and he fell through the hole. If it had been in good condition it would not have broken with the weight of an ordinary person.''

But though this evidence speaks negligence of someone, under this rule, does it determine who committed the negligence or who is responsible for its result? With the further evidence, without more, that the defendant Telephone Company owned and was occupying and controlling this building from which the window fell on plaintiff, the presumption would arise, or the inference be properly drawn, that such owner and occupant is the responsible party for the negligence. But the plaintiff's petition alleges that the defendant Realty Company was at the time ''occupying same under contract of rental from the Telephone Company,'' and that the defendants jointly maintained this plate glass window. At the trial each defendant, in endeavoring to exculpate itself, sought to show that the other one was guilty of or responsible for the negligence, if any. To this end the Telephone Company put in evidence its lease to the Realty Company covering the room or office from which the plate glass fell on plaintiff. This lease, dated June 20, 1928, for a term of ten years, is lengthy, but the material parts read:

''The lessor does hereby lease to the lessee the store room known as No. 111 N. Tenth Street, St. Louis, Missouri, not including any exterior portion of said premises or building or the walls thereof, . . . to be used and occupied as a real estate office and for no other purpose. . . . The lessor reserves the right to prescribe the form, size, character, and location of any and all awnings affixed to and of all signs which may be placed or painted upon any part of the demised premises, the lessor reserving the right to use all exterior walls and fences; and the lessee covenants and agrees not to affix any awning or to paint or place any sign upon any part of the demised premises, without the written consent of the lessor, nor to bore or cut into any column or beam or other part of the demised premises for any purpose whatsoever.'' . . . For violation of this ''the lessor may at once reenter and remove such awning, or take down, paint out and obliterate such sign, and repair any damage done, or cause the same to be repaired, and charge the cost of same to the lessee; or, at the option of lessor, this lease may be terminated.'' . . . ''The lessee agrees to surrender said premises at the end of the term in as good condition as received, ordinary wear and tear excepted. All plate and other glass now in said demised premises is at the risk of said lessee, and if broken, is to be replaced by and at the expense of said lessee; all repairs to the

demised premises shall be done by the lessee; no alterations, additions or improvements shall be made in said premises without the written consent of the lessor." The lease requires prompt payment monthly of the rent and provides for forfeiture in case of failure to pay or for violation of any terms of the lease.

■ The defendant Telephone Company, as showing its own non-liability in this case, invokes the law of landlord and tenant to the effect that where the premises in question are under lease by the owner to a tenant, and such tenant is in possession and control of the premises at the time the injury occurred, it is the duty of the tenant to keep the property in repair, and, in the absence of an express obligation of the landlord or owner to make repairs, no such duty devolved on it and consequently no liability for failure to do so.

■ In Rice v. White, 239 S. W. 141, 144, a case similar in most respects to this one, the court said: "As to codefendant White (the landlord and owner of the building), it was shown that the second and third stories of the building in question were leased to Miss Hart; that she had possession and full control thereof, and that it was her duty to keep said property in repair. No liability could accrue against the owner of the property, for, in the absence of contract to that effect, the landlord is under no obligation to repair. [Kohnle v. Paxton, 268 Mo. 463, 188 S. W. 155; Tailoring Co. v. Dobbin, 195 Mo. App. 435, 192 S. W. 1044.] Furthermore, it is the duty of those in actual charge and occupancy of property to keep it in condition. [Kilroy v. St. Louis, 242 Mo. 79, 145 S. W. 769.]" While this case, as shown by the cases cited in its support, applies the rule of nonliability of the landlord for injuries due to want of repair of the leased premises occupied by a tenant, to persons using public streets, yet it is pointed out in Bender v. Weber, 250 Mo. 551, 561, 157 S. W. 570, that there is a distinction and it will not do to apply indiscriminately the rules of liability or nonliability of landlords and tenants respectively for injuries arising on and out of the use of the leased premises to cases involving injury to persons using public highways.

In Cool v. Rohrbach, 21 S. W. (2d) 919, it is said that the law imposes the highest degree of care and vigilence to prevent injury to persons using a public highway.

Speaking of the liability of owners of property abutting on public highways, 13 Ruling Case Law, 427 says: "It is incumbent upon the owner of a building adjoining a highway, as between himself and the public, to exercise at least reasonable care to keep the same safe, and, if he fails to do so, he will be responsible to travelers injured by the fall of the building or any part of it, or of objects from it, into the highway. Thus, for instance, such owner has been held

liable to a traveler injured by the fall of an iron pipe attached to a building which is permitted to get out of repair, or by the fall of a brick from the dilapidated wall of a house. So, too, it is his duty to keep awnings which he erects or maintains across the sidewalk from becoming dangerous to travelers, and to exercise ordinary care to see that they are so secured and managed as to be able to withstand not only the ordinary vicissitudes of the weather, but the force of winds which experience has shown are likely to occur in that locality, and he is liable for injuries resulting from his failure to do so. Usually the property owner is not regarded as an insurer of the safety of travelers, and is held liable only where negligence on his part is shown, and is relieved of responsibility if he exercises due care. . . . In determining the question of negligence of the property owner, the doctrine of *res ipsa loquitur* is often applied.''

As to liability, where the property is under lease to tenants, this same authority, pages 326-327, says: ''Usually the question of liability for injuries due to the failure to keep the leased premises in repair is made to depend largely on whether they were in such a condition as to constitute a nuisance when the lease was made. Under this rule the landlord is liable notwithstanding the lease if at the time it was made the premises were, from their condition or construction, dangerous to persons using the highway, that is, where the danger consists in the permanent condition of the premises and not in the way they are used by the tenant. . . . The rule is often applied also to cases where pedestrians are injured by reason of ice formed on the sidewalk from water cast thereon from a pipe constructed by the landlord, or water which runs off of the roof of a leased building, or is discharged from defective gutters, or where the roof of a building is so constructed that ice and snow collecting on it naturally fall to the sidewalk, or for injuries to a pedestrian by gates or doors so constructed as to swing out over the walk. The tenant is also liable under such circumstances, if he uses a coal hole or similar opening while it or its covering is in a defective condition, or maintains an open cellar way which is not protected by railings or otherwise, though the defect existed before he went into possession. . . . Under such circumstances it is his duty to see that the opening and cover are in proper repair, and he cannot relieve himself from liability by claiming that his attention was not called to their unsafe condition, nor because the lease prohibited him from making alterations or additions. But the fact that the tenant may also be liable is not a defense for the landlord in such cases.''

As to the effect on liability of a covenant in the lease as to repairs, this authority says at page 330: ''Ordinarily if the premises are

in a dangerous condition when leased, the landlord will be liable even where the tenant covenants to repair, though there seems to be some authority to the contrary. Such a covenant will not relieve the landlord from liability for injuries resulting from the fact that the leased building is so constructed as to precipitate snow upon passers-by. Nor will it absolve him from liability to a person injured by the fall of a part of the building on the sidewalk, but both he and the tenant are liable under such circumstances. Similarly, the fact that the tenant has agreed to keep a scuttle in the sidewalk closed will not relieve the landlord from liability if the cover was negligently constructed.

The law certainly is that the owner of property who leases it to a tenant in a dangerous or defective condition is liable to a third person receiving injury because of such defect, though the property be at the time under lease and in possession of the tenant with an agreement, express or implied, that the tenant shall make repairs or keep the property in repair. ''The rule in such cases is that the 'landlord's liabilities in respect of possession, are in general suspended as soon as the tenant commences his occupation. But when injuries result to a third person from the faulty or defective construction of the premises, or from their ruinous condition at the time of the demise, or because they then contain a nuisance, even if this only becomes active by the tenant's ordinary use of the premises, the landlord is still liable notwithstanding the lease.' [Taylor, Landlord and Tenant (8 Ed.) sec. 174.]'' [Fehlhauer v. City of St. Louis, 178 Mo. 635, 646, 77 S.. W. 843.]

And in Mancuso v. Kansas City, 74 Mo. App. 138, it was held that ''if a landlord leases premises with a coal hole in the sidewalk out of repair and a tenant permits it so to remain both landlord and tenant will be liable as well as the city to the party injured by such negligence.''

In Buesching v. St. Louis Gaslight Co., 73 Mo. 219, both the owner of the building and his tenant in possession were held liable where a pedestrian fell into an opening near a sidewalk, which opening was not properly guarded, on the ground that ''if the owner lets premises with the nuisance upon it, and the tenant allows it to remain, they are jointly and severally liable for injuries occasioned thereby.''

In this case we think there is sufficient evidence to warrant a finding that the fall of this glass from the window in question was due to some defect in the construction of the window or fastening to the frame holding the same in place. On the occasion in question the whole glass did not fall out but a part of it remained in the frame, showing that it broke just before or at the time of falling. There was evidence that part of the metal fastening designated as

the "corner bar" was found to be twisted and out of shape when examined soon after the glass had fallen. This condition was discovered by a workman of the glass company which put in a new plate glass the next day after the accident, and the defect necessitated the putting in of a new corner bar. The evidence also showed that this was the third time this glass had broken within six months, the first time being in January, and the other being just a few days prior to the occasion in question. The defendant Realty Company carried plate glass insurance and when this glass broke the second time, just a few days before the occasion in question, the insurance company had a glass company put in a new glass, but whether the fastenings were then examined or were then in the defective condition found after the last breaking is not shown. The Realty Company claims that its only obligation was to replace the glass when broken, and that it was under no obligation to inspect or correct any defect in the fastenings or frame which held the glass in place, that being part of the outer wall, the control of which was retained by the Telephone Company under its lease. The building had been erected and in use some five years and it was shown that the same frame work and copper fastenings for the glass as originally installed was still in use when this accident occurred. There was some wind blowing at the time of the accident but not strong enough to be extraordinary. The accident occurred on Sunday and it stands uncontradicted that the room or office occupied by the Realty Company was closed and locked during that day and no one there.

The Telephone Company went no further than to prove that the construction of the building in question was under the supervision of a competent architect and was constructed by a large and reputable contracting firm. The frames holding the glass in place were known as the Kawneer brand, extensively used and approved. A controversy arose between the two defendants as to which of them had or caused the building to be repaired and a new glass put in on the occasion in question. The Realty Company claimed that the Telephone Company had this done by a glass company selected by it, without consulting or being authorized by the Realty Company (but admitted it was paid for by its plate glass insurance company), on its threat to throw up its lease and move out of the building unless something was done to prevent this too frequent breaking of this glass, which interfered with its business. The Telephone Company claimed that while it had the glass company put in this new glass (and repair the frame also), it did so on request of the Realty Company and the cost was charged to and paid by the plate glass insurance company whose policy was issued to and paid for by the Realty Company. This presented the only sharp conflict in the evidence.

In the order given by the Telephone Company to the glass company to fix this glass, this is said: "This is your authority to replace two plate glass windows, install one corner stabilizer at 111 N. Tenth Street, as requested by Mr. Kelso. Confirming. These two windows were broken 5/11/30, by the wind. Kindly bill the Central Surety Insurance Company, Pierce Building, St. Louis, for the above work." How the Telephone Company learned that it was necessary to install a new "corner stabilizer" is not shown.

We need only to say at this time, that, considering the extraordinary character of this accident and the restricted right of the Realty Company as tenant in the use of the outer walls in making repairs, the evidence is sufficient to sustain the verdict against the Telephone Company. The same is true as to the Realty Company, the tenant in possession.

In Cool v. Rohrbach, 21 S. W. (2d) 919, the law is stated thus: "Assuming, without deciding, that, under the terms of the lease, it is the duty of the owner, as between him and the respondent (tenant), to keep the areaway in repair, this does not relieve respondent from liability for its failure to discharge the duty it owed to the appelland and others who might be traveling on the sidewalk. Respondent could not relieve itself of such duty to appellant and others by contract with the owner. Rights may be assigned, but liabilities may not be. [Norton v. St. Louis, 97 Mo. 537, 11 S. W. 242; Kohnle v. Paxton, 268 Mo. 463, 188 S. W. 155.]"

The trial court, however, did not sustain the demurrer to the evidence as to either defendant, and in this we think it was correct. But when the jury returned a verdict against the Telephone Company and in favor of the Realty Company, the court granted a new trial to the Telephone Company and to plaintiff because, in its judgment, the verdict was against the weight of the evidence. This is equivalent to holding that the weight of the evidence is in favor of the Telephone Company and against the Realty Company and that the verdict ought to have been that way. We need not agree with the trial court in this respect, and what we have said indicates that had the trial court overruled these motions, then, in the absence of other error, we would affirm the judgment. We have held time and again that it is the province of the trial court, and not of this court, to weigh the evidence on motions for new trial and to grant same if, in its judgment, the verdict is against the weight of the evidence. This court will not interfere with that discretion unless plainly abused by the trial court. This is sometimes expressed by saying that the granting of a new trial by the trial court will not be interfered with on appeal where there is substantial evidence to sustain the trial court's view, or, putting it another way, when there is

substantial evidence to support a verdict for the party to whom a new trial is granted. [Fitzjohn v. Transit Co., 183 Mo. 74, 78, 81 S. W. 907; Higgins v. Higgins, 243 Mo. 164, 171, 147 S. W. 962; Cullison v. Wells, 317 Mo. 880, 297 S. W. 370, 373; McCarty v. St. Louis Transit Co., 192 Mo. 396, 401, 91 S. W. 132; Story v. August, 10 S. W. (2d) 965.] These and many like cases are cited and relied on by plaintiff as respondent in the appeal by the Realty Company to support the action of the trial court in granting plaintiff a new trial against the Realty Company. They are likewise cited and relied on by defendant Telephone Company as respondent in plaintiff's appeal from the order granting that company a new trial.

██ ██ So, also, the plaintiff, as appellant from the order granting the Telephone Company a new trial, relies on the well-established exception to the general rule stated upholding trial courts in granting new trials as being against the weight of the evidence, that such new trials can be granted on that ground only when the evidence is conflicting and there is substantial evidence both ways to be weighed against each other, or, putting it another way, no new trial can be granted because the verdict is against the evidence when the facts are undisputed for then only a question of law is involved. [Yuronis v. Wells, 322 Mo. 1039, 17 S. W. (2d) 518; Loftus v. Railroad, 220 Mo. 1. c. 478, 479, 119 S. W. 942; Lead & Zinc Co. v. Webster, 193 Mo. 351, 364, 92 S. W. 79; Herbert v. Hawley, 32 S. W. (2d) 1095.] Plaintiff then, as respondent in the appeal of the Realty Company from the order granting plaintiff a new trial against it, invokes this same exception to the general rule on the ground that in this case the facts are undisputed and only questions of law are presented, citing the same authorities and using the same argument in opposing the order in one appeal and upholding it in the other. Plaintiff's seeming inconsistency, however, is merely on the surface rather than real. In so arguing the parties do so on the theory that the written lease fixes liability on the Realty Company as tenant in possession and exonerates the Telephone Company as lessor, and that only one of them is liable. The trial court, by overruling the demurrers to the evidence and by its instructions, held that the evidence was sufficient to make a case against either or both defendants, and we think the same way. When the jury returned a verdict for the Realty Company (tenant) and against the Telephone Company (lessor), the court then weighed the evidence as to each one and held that the weight of the evidence was in favor of the Telephone Company and against the Realty Company. In so weighing the evidence the court properly took into consideration that this is a *res ipsa loquitur* case and the burden was thrown on the defendants to refute the inferences of negligence arising from the accident

itself as well as the evidentiary facts, and the question of what inferences should be reasonably drawn by the jury entered into the determination of the weight of the evidence.

In view of another trial, it may also be said that plaintiff's principal instruction covering the entire case as to both defendants is too general in its language in that it predicates liability of each and both defendants on the same charge of "maintaining the glass window" and "negligently permitted same to fall out of the building and onto plaintiff," and ignores the fact that one defendant was owner and lessor and the other the tenant. As we have seen, the liability of each respectively depends in part at least on different findings or inferences of fact, that of the Telephone Company depending on the defect in or negligence connected with the original construction of this plate glass window and its fastenings. While not within our province to do so, we would suggest separate instructions as to each defendant setting forth the facts which, if found, would make each liable. In insisting on a judgment against both defendants, the plaintiff takes upon herself this burden.

Also the instruction on the measure of damages is faulty in not limiting the finding for specific items of damage such as medical attention, etc., to the amounts claimed therefor in the petition and shown by the evidence. Other matters discussed by counsel need not be further noticed.

The judgment of the trial court is affirmed. *Ferguson* and *Hyde*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All of the judges concur.